WATTERS, Appellant, v. LINCOLN, Respondent.

(135 N. W. 712.)

1. **Specific Performance—Enforcibility of Contract.**

Where it is doubtful under the evidence whether a contract for sale of land was made or concluded, equity will not compel specific performance.

2. **Contract—Consent—Offer—Acceptance—Withdrawal of Offer.**

Under Civ. Code, Secs. 1212, 1215, 1216, concerning communication of consent, and revocation of proposal, a revocation of an offer is consummated as soon as notice thereof is deposited in the post office, and an acceptance of an offer made thereafter is ineffectual to conclude a contract.

3. **Specific Performance—Revocation.**

The letter of defendant to plaintiff, which it is inferred from the evidence was mailed on a certain date and before the hour at which plaintiff delivered a telegram of acceptance of defendant's offer of land for sale, which letter informed plaintiff that the land had been sold, leaves it doubtful under all the evidence whether a contract was or was not concluded; the burden of proof is upon plaintiff; and in such case equity will not grant specific relief.

4. **Notice of Revocation—Sufficiency of Notice—Communication.**

Plaintiff having been informed prior to sending his telegram of acceptance, that defendant had sold and disposed of the land in question; such information being at least sufficient to put plaintiff upon inquiry and constituting notice of revocation in manner provided by law, before acceptance of defendant's offer was communicated to defendant; and plaintiff being aware of the sale prior to his at-

tempted acceptance, he is precluded from the relief sought herein.

(Opinion filed, April 2. 1912.)

Appeal from Circuit Court, Spink County.   Hon. ALVA E. TAYLOR, Judge.

Action by G. M. Watters against A. D. Lincoln for specific performance of contract for sale of land.   Trial to the Court. From a judgment for defendant, plaintiff appeals; alleging insufficiency of evidence to justify the findings and judgment, and that findings and judgment are against law.   Affirmed.

*N. P. Bromley*, for Appellant.

The trial court found that this was a unilateral contract, one without consideration and that the defendant had a right to sell this land as he did some time in August, about the 28th, to Lyons Schoniger Land Co., because he could get $65 per acre from them.   The contract must be mutual.   Ross v. Parks, 93, Ala. 153; 1 Pom. on Specific Per., Secs. 167, 168; Moses v. McLain, 82 Ala. 370; 1 Pom. on Spec. Perf., Secs. 167, 168; Ide v. Heiser, 10 Mont. 5; Boston & M. R. R. Co. v. Bartlett, 3 Cushing, 227; Turner v. McCormick, 56 West Va. 161, also found in 107 Am. St. Rep. 905, 61 N. W. 384; Vol. 9 of Cyc. 269.

If this court should say that Lincoln's letter of August the 17th which we call the contract, is an option then it is a binding offer.   Lincoln parts with the right to withdraw his offer until September 5, 1910.   O'Brien v. Ballard, 166 Mass. 481; Finlen v. Hernz, 80 Pac. 918, New Jersey Eq. 208, 48 Atlantic 25, 24 Am. St. R. 1777, Pacific 134, 70 N. E. (Ind.) 535.

An option is an offer to sell which offer the maker is bound to keep open during the time mentioned.   Waterman v. Banks, 144 U. S. 394.   It is held in Sec. 799 Pom., where hardship arises by defendant's own act, he can not complain of the result of his own conduct.   The fact until acceptance there was no mutuality of the obligation—nothing which the vendee was bound to do— is no obstacle in the way of specific performance.   This is well settled in nearly all the jurisdictions.   36 Cyc., page 624; Ross v. Parks, 30 Am. St. Rep. 47.

A unilateral contract in writing giving a right to purchase land within a given time for a given price, is binding upon the

party who signs it for the time stipulated for the exercise of the option.   Coleman v. Appelgarth, 6 Am. St. Rep. 417; Calchina v. Branstetter, 84 Cal. 249; Note in 30 Am. St. Rep. 109, 850; Lafflah v. Naglee, 70 Am. Dec. 678; Rude v. Levy, 127 Am. St. Rep. 123 (Col. case); Seymour v. Delancety, 15 Am. Dec. 299.

Both in this country and in England it is well settled that, so far as the negotiation of contracts is concerned, there is no difference between the telegraph and the mail.   Hare on Contracts, 362; Pollock on Principles of Contract, 17; Gray on Communication by Telegraph, Sec. 112; Redfield, J., in 14 Am. Law Reg., N. S., 406; Stevenson v. McLean, L. R. 5 Q. B. D. 346; Minnesota Oil Co. v. Collier Lead Co., 4 Dill. 431; True v. International Telegraph Co., 60 Me. 9; Hallock v. Commercial Insurance Co., 26 N. J. L. 268.   The contract becomes complete the moment the message containing an unqualified acceptance is delivered to the telegraph company for transmission.   And such acceptance is, in this country, at the risk of the party whose proposition is accepted, whether it arrives in due course of the telegraph, correctly or incorrectly, or not at all.   Adams v. Lindsell, 1 Barn. & Ald. 681; Newcomb v. De Roos, 2 El. & E. 271; Dunlop v. Higgins, 1 H. L. Cas. 381; Harris' Case, L. R. 7. Ch. 587; Hebb's Case, L. R. 4 Eq. 9; Byrne v. Tienhoven, L. R. 5 C. P. D. 344; Household F. C. A. I. Co. v. Grant, L. R. 4 Ex. D. 216; Haas v. Myers, 111 Ill. 421, S. C. 53 Am. Rep. 634; Barr v. Insurance Co. of N. A., 61 Ind. 495, citing the principal case; Moore v. Pierson, 6 Iowa, 279; S. C., 71 Am. Dec. 409; Ferrier v. Storer, 63 Iowa, 484; Siebold v. Davis, 67 Id. 560; Abbott v. Shepard, 48 N. H. 14; Hallock v. Commercial Ins. Co., 26 N. J. L. 268; Commercial Insurance Co. v. Hallock, 27. Id. 645; Mactier v. Frith, 6 Wend. 103; Brisban v. Boyd, 4 Paige 17; Vassar v. Camp, 11 N. Y. 441; Hamilton v. Lycoming M. I. Co., 5 Pa. St. 339; Durkee v. Vermont Central R. R. Co., 28 Vt. 127; Prosser v. Henderson, 20 U. C. O. B. 428; Tayloe v. Merchants' F. Ins. Co., 9 How. 390; Darlington Iron Co. v. Foote, 16 Fed. Rep. 646; 2 Kent's Com. 477; 14 Am. Law Reg. 406; Gray on Communication by Telegraph, Sec. 115; Scott and Jarnagin on Law of Telegraphs, Sec. 347

When an offer is made by letter, an acceptance by written communication takes effect from the time when the letter containing the acceptance is mailed, and not from the time when it was received by the other party. Potter v. Sanders, 6 Hare, 1; Levy v. Cohn, 4 Ga. 1; Stockham v. Stockham, 32 Md. 196. The person making the offer may, if he choose, make the formation of the contract which he proposes dependent upon the actual communication to himself of the acceptance. Lewis v. Browning, 130 Mass. 173; Vassar v. Camp, 11 N. Y. 441. But if he does not do so, the contract is binding upon him from the time the acceptance is deposited for transmission to him, although the letter or message is in fact never received by him. Duncan v. Topham, 8 Com. B. 225; Vassar v. Camp, 11 N. Y. 441; Washburn v. Fletcher, 42 Wis. 151. If an offer is not retracted, it is considered as continuing in force until the time for accepting or rejecting it has arrived. Stevenson v. McLean, L. R. 5 Q. B. D. 346. But as soon as the acceptance has been mailed or delivered to the telegraph company for transmission, the contract is complete, and the offer cannot then be retracted without the consent of the party who accepted it. Byrne v. Van Tienhoven, L. R. 5 C. P. D. 344; Kentucky Mut. Ins. Co. v. Jenks, 5 Ind. 96; Wheat v. Cross, 31 Md. 99; Commercial Ins. Co. v. Hallock, 27 N. J. L. 645. But see McCulloch v. Eagle Ins. Co., 1 Pick. 278. The acceptance however, must be unconditional. If it is conditional only, the offerer may withdraw his offer. Haas v. Myers, 111 Ill. 421: S. C., 53 Am. Rep. 634; Baxter v. Bishop, 65 Iowa, 582; Baker v. Holt, 56 Wis. 100; Martin v. Northwestern Fuel Co., 22 Fed. Rep. 596.

Statute of Frauds is sufficiently complied with by a message written and signed by the sender, and delivered to the telegraph company for transmission. Leake on Law of Contracts, 265; Godwin v. Francis, L. R. 5 Com. P. 295; Hawley v. Whipple, 48 N. H. 487. But where the proposal and acceptance do not completely fit, there is no sufficient memorandum to satisfy the statute of frauds. Bishop on Contracts, Sec. 1248

There is some evidence that a farmer named Elwell came into Redfield about August 26th and created a rumor that this land.

had been sold by Lyons-Schoniger Land Co. Be that as it may mere rumors in the neighborhood are not notice rendering it obligatory upon any party to investigate it. Vol. 29 Cyc., page 115. The decision of the lower court must be reversed.

To disable plaintiff from accepting offer of sale defendant should have brought home to plaintiff actual notice that he had revoked his offer. Baner v. Shaw, 168 Mass. 198; Trevor v. Wood, 93 Am. Dec. 515, and note; Perry v. Mount Hope Iron Co., 15 R. I. 380, 2d Am. St. Rep. 902, and note.

Lincoln's letter mailed August 26 was not a notice of revocation because Waller had accepted by telegram August 26. The law governing this question is found in a note, McClay v. Navey, 32 Am. Rep., page 52.

*Bruell & Morris,* for Respondent.

A proposal may be recalled at any time before its acceptance is communicated to the proposer, but not afterwards. Civil Code, Section 1215.

A proposal may be revoked by communication of notice of revocation by the proposer to the other party in the manner prescribed by Sections 1210 and 1212 before his acceptance has been communicated to the former, or by the failure of the acceptor to fulfill a condition precedent to acceptance. Civil Code, Section 1216.

Again, we assert that the sending of the telegram by Watters to Lincoln, wherein he said "I will accept your offer," and "I will send you the money," is not enough. It required the money to be sent, and full compliance and acceptance to all the terms.

A person having or claiming an option cannot make a binding contract by accepting a proposition after he knows or believes that the person who has made the offer has sold the property to someone else. Dickinson v. Dodds, 2 L. R., Ch. Div. 463.

Where specific performance was impossible at the time of the commencement of the suit, and plaintiff knew or was informed at that time of the impossibility, the court, on denying mutual relief, will not retain the case for the purpose of awarding damages, but will leave him to his legal remedy. 36 Cyc. 747, and cases cited.

In this case, however, there are no damages to be ascertained or awarded, and plaintiff fails to plead any damages. The only indication in plaintiff's complaint in reference to any damages at all is in the prayer for relief, wherein plaintiff, on page 3 of the abstract, in asking for relief, says:,—"that the defendant execute to the plaintiff the contract for a deed to said land; the contract mentioned in the defendant's letter of August 17, 1910, and for $3,000 damages for withholding same."

It is a most peculiar prayer, and the relief sought for is most peculiar.

When the owner of land makes a sale of the premises himself before acceptance, his act of selling revoked the offer and notice was unnecessary. Stensgard v. Smith, 44 N. W. R. 669.

McCOY, P. J. It appears from the record that at all times material to the issues defendant resided at Seattle, in the state of Washington, and that plaintiff resided at Redfield, Spink county, this state. Defendant was the owner of two quarter sections of land in Spink county. On the 17th day of August, 1910, defendant wrote plaintiff a letter, offering to sell to him the said quarter sections of land upon certain specified terms at any time on or before September 5th following. This letter was received by plaintiff in due course of mail some three or four days later. On the evening or night of August 26, 1910, plaintiff by a night telegraph letter or message wired to defendant his acceptance of the said offer of defendant contained in said letter of the 17th, which night message was delivered to defendant on the morning of the 27th day of August. Defendant on receipt of this message immediately wired back to plaintiff: "Twenty-four hours too late. Land sold." On the 26th day of August, about 11 a. m., defendant received a telegram from Lyons & Schoniger Land Company of Redfield, defendant's agents, informing him that they had sold defendant's said land, and on the same day accepted said sale by Lyon & Schoniger Company by mailing to them a letter of acceptance and also mailed a letter to plaintiff informing him of the sale of said land, which letter to plaintiff was postmarked at Seattle at 6 p. m. August 26th, and was received by plaintiff on August 29th. It appears from the evidence that plaintiff knew at

the time of receiving said offer and prior thereto that defendant was offering said land for sale, through others. It also appears from the evidence that plaintiff was informed personally and received knowledge on the 26th day of August prior to sending his night message of acceptance that said land had been sold by defendant, was so informed by one Elwell who farmed said land. Plaintiff brought suit to compel specific performance of the alleged contract to sell said land mentioned in said letter of defendant to plaintiff dated August 17, 1910. Defendant answered, alleging that he had sold said land prior to the acceptance by plaintiff of the offer to sell contained in said letter of August 17th, and that plaintiff had knowledge thereof. Findings and judgment were made and rendered in favor of defendant, and plaintiff appeals, alleging insufficiency of the evidence to justify the findings and judgment, and that the findings and judgment are against the law. We are of the opinion that the evidense fully sustains the findings and judgment, and that the same are not against the law.

[1] Pomeroy in his work on Contracts says: "Before specific performance of a contract can be compelled by decree of a court, a contract must be actually concluded between the parties, for otherwise there are no rights upon which the equitable remedy can operate. An agreement is the result of a mutual assent of two parties to certain terms, and, if it be clear that there is no consensus, what may have been written or said becomes immaterial. Whenever, therefore, the transaction has not passed beyond the condition of negotiation or treaty, there can be no specific performance. And, if it is left doubtful from all the evidence in the case whether a contract was concluded or not, equity will not grant specific relief. Contracts resulting from negotiations, whether written or verbal, when reduced to their elements, generally consist of an offer and an acceptance. An offer or proposal made by one party and the acceptance thereof by the other constitute a contract; in other words, it is thereby concluded, so that it may be enforced. By these means the minds of the parties meet, and their mutual assent is obtained in respect to the same terms and subject-matter. The offer or proposal has, before acceptance, no binding force or effect. Even when promissory in

its form, it is, at most, a unilateral promise, without consideration. It is the act of one party alone, and requires the corresponding act of the other party in order to produce the mutual assent, and to give it a legal vitality as a constituent part of a contract. When the proposal is in writing, it acquires, as such, no higher or more compulsory character. It has none of the qualities which belong to a written memorandum of an agreement. The offer is, while it remains such, completely under the control of the person who makes it. As the offer is not in any sense binding, the person who makes it may at any time before a valid acceptance has changed its character withdraw it, and thus put an end to the negotiation. He can do this whatever be its form, whether promissory or not, and without any reason except his own will. Although the person to whom the offer was made may have intended, and even attempted, to accept, still if for any reason the acceptance was imperfect and not binding, so that no contract was concluded, the power of withdrawal remains unaffected. If the offer, in express terms specifies the time within which the acceptance may be or must be made, or, in other words, states the period during which it will remain open, the power of withdrawal is not thereby restricted, but may be exercised at any time before an acceptance and before the limitation has expired. No formal notice is necessary to constitue a withdrawal. It is sufficient that the person making the offer does some act inconsistent with it, as, for example, sells the property in question to another purchaser, and that the person to whom the offer was made has knowledge of such act. Indeed, it appears that a sale of the property to a third person would of itself be a withdrawal, although made without the knowledge of the originally intended vendee." Poomeroy on Contracts, subject, Specific Performance, §§ 58, 59, 60, 61. "It is elementary that every express executory contract, whatever the subject-matter may be, consists of a proposal or offer made by one party, and an acceptance thereof by the other party. Therefore there can be no contract for the purchase and sale of real estate without an offer by one person to buy or to sell and the acceptance of such offer by the person to whom it is made. Since an offer to buy or sell

is not a contract, but only an expression of willingness to make a contract, it may be withdrawn at any time, so long as it has not been accepted. But an offer cannot be withdrawn by a mere determination to withdraw it. The fact of withdrawal must, on obvious principles, be communicated to the other party. No formal notice is required, however. It is sufficient if the person to whom the offer was made has actual knowledge that the other person has done some act inconsistent with the continuance of the offer. The fact that the offer names a certain period within which acceptance may be made merely limits the time that the offer shall remain in force, and does not affect the right of withdrawal within such time, unless a consideration moves from the person to whom the offer is made so as to constitute a valid option, or the offer is made in the form of a promise under seal. Withdrawal may be effected by implication, as well as by express declaration that the offer is withdrawn. Thus an offer to sell is withdrawn where the owner of the land sells it to third parties before the person to whom the offer was made signifies his acceptance." 29 Am. & Eng. Ency. pp. 593-595; Dickenson v. Dodds, 2 Ch. D. 463; Coleman v. Appelgarth, 68 Md. 29, 11 Atl. 284, 6 Am. St. Rep. 417. In this last-cited case the court approved this language, quoted from Dickenson v. Dodds, an English case: "If the rule of law is that a mere offer to sell property, which can be withdrawn at any time, and which is made dependent on the acceptance of the person to whom it is made, is a mere nudum pactum, how is it possible that the person to whom the offer has been made can by acceptance make a binding contract after he knows that the person who has made the offer has sold the property to some one else? It is admitted law that, if a man who makes an offer dies, the offer cannot be accepted after he is dead, and parting with the property has very much the same effect as the death of the owner, for it makes the performance of the offer impossible. I am clearly of the opinion that, just as when a man who has made an offer dies before it is accepted, it is impossible that it can then be accepted; so, when once the person to whom the offer was made knows that the property has been sold to some one else, it is too late for him to accept.

the offer, and on that ground I am clearly of the opinion that there was no binding contract for the sale of this property by Dodds to Dickenson.  In this case the plaintiff admits that, at the time he proffered to Applegarth acceptance of the previous offer to sell at the price named, he was aware of the fact that the property had been sold to Bradley.  It was therefore too late for him to attempt to accept the offer, and there was not, and could not be made by such proffered acceptance, any binding contract of sale of the property.''  In the case of Frank v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963, the Supreme Court of Wyoming said: "We are constrained, therefore, to hold that the finding of substantial compliance with the terms of the contract is not sustained by the evidence.  No doubt the contract was valid, so far as effective, and the agreement to convey upon payment of the purchase price, although without consideration, obligated Frank to make the conveyance had there been an acceptance and tender before a revocation on his part.  But as his promise was, so far as the record discloses, without consideration, it was his privilege to revoke it at any time previous to acceptance; and the sale and conveyance of the property to Mrs. McKenzie, which does not appear to have been otherwise than in good faith and for a valuable consideration and which was brought to the knowledge of the plaintiff before any attempted acceptance of the option, amounted to a sufficient revocation."

[2] Section 1215, Civ. Code, provides that: "A proposal may be revoked at any time before its acceptance is communicated to to the proposer, but not afterwards."  By section 1216 the provisions of section 1212 are made applicable to the communication of notice of revocation of a proposal.  The provisions of section 1212 as applied to notice of revocation would be that revocation would be deemed to be fully communicated between the parties as soon as the party making the revocation places his notice of revocation in the course of transmission to the person to whom the offer was made.  Hence it would necessarily follow that any acceptance of the offer made after the person making the offer had deposited in the post office the letter containing notice of revocation would be ineffectual for the purpose of concluding the con-

tract. We are aware that a different rule exists in many other jurisdictions, but this statute law of this state establishes the rule in this jurisdiction.

[3] The letter of defendant to plaintiff of August 26, 1910, informing plaintiff that said land had been sold, was a revocation of the offer made to plaintiff and notice thereof. The said letter of defendant was post-marked at Seattle August 26th at 6 o'clock p. m. Plaintiff by his testimony does not inform us of the hour or time on the 26th day of August when he delivered the telegram of acceptance to the telegraph company for transmission; but says: "I sent a night message on the 26th of August." The burden in this case was upon plaintiff, and we cannot say from this testimony that the telegram of acceptance was put in course of transmission prior to 6 o'clock p. m. of August 26th, but the natural inference is that it was not. Where it is left doubtful from all the evidence whether a contract was concluded or not, equity will not grant specific relief. Pomeroy on Contracts, § 59.

[4] We are also of the opinion that plaintiff should not be permitted to recover in this action for the reason that prior to the time he sent his night message of acceptance he was aware of the fact that defendant had sold and disposed of the land in question, thereby making it impossible for defendant to make a sale thereof to plaintiff. Plaintiff knew prior to the time defendant made the offer to him that defendant had other agents who were endeavoring to make a sale of said land. This clearly appears from the letter of plaintiff to defendant of August 12th. Plaintiff was informed during the day of August 26th that the land had been sold. He was so informed by the tenant who farmed the land. Information from such a source is more than common rumor. It was at least sufficient to put plaintiff upon inquiry. Either of the grounds (1) that the notice of revocation of defendant's offer was communicated to plaintiff, in the manner provided by law, before the acceptance thereof was communicated to defendant, (2) that plaintiff was aware of the sale of said lands by defendant prior to his attempted acceptance, is sufficient to preclude plaintiff from the relief sought by this action.

Finding no error in the record, the judgment of the lower court is affirmed.