1999 SD 11

**Patrick M. GERAETS and Michael J. Geraets, Plaintiffs and Appellants,**

v.

**Ernest HALTER and Ethel M. Halter, Defendants and Appellees.**

**No. 20509.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1998.

Decided Jan. 27, 1999.

Michael A. Hauck, Quaintance, Hauck & Mullen, Sioux Falls, for plaintiffs and appellants.

John A. Shaeffer, Flandreau, for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Patrick and Michael Geraets appeal from a trial court judgment finding no enforceable contract on the sale of real property. We affirm.

### FACTS

[¶ 2.] Patrick (Pat) and Michael (Mike) Geraets operated as a partnership known as "Geraets Brothers." Ernest and Ethel Halter owned land that the Geraets rented. Prior to the transaction in question, Ernest had always dealt with the partnership, Geraets Brothers, and not with either Pat or Mike individually.

[¶ 3.] On September 2, 1997, Mike Geraets and Ernest discussed the sale of Halters' land. A price of $750 per acre was agreed upon and the two decided to go to Ernest's attorney, Glen Eng, to draw up the necessary papers. On the way to Eng's office, Mike phoned Pat regarding the purchase of the land. Ernest was advised the brothers would be purchasing the land together.

[¶ 4.] When Ernest and Mike arrived at Eng's office, it was determined Mike and Pat were undecided as to the division of the land to be purchased. Attorney Eng advised the parties he would wait to draw up two offer and purchase agreements until the Geraets

had decided how they wanted to split the land. A contract for deed would be drafted after the purchase agreements were received back, along with a $500 down payment.

[¶ 5.] On September 19, 1997, Mike and Pat contacted Eng with the information on how they wanted to split the land. Eng drew up the purchase agreements and the Halters signed them. Eng subsequently sent out two separate offer and purchase agreements signed by the Halters to Mike Geraets.

[¶ 6.] Neither Eng nor the Halters received any word back until October 22, 1997. In the interim, Ernest frequently stopped by Eng's office to inquire whether he had received any response. On October 22, Ernest stopped at Pat's home to ask about the status of the agreements. Pat was not available, but Ernest spoke with Pat's wife. Pat's wife informed Ernest that Mike had injured his back and he was contemplating quitting farming. Furthermore, Pat and Mike were considering dissolving their partnership.

[¶ 7.] The following day, October 23, Ernest and Pat spoke on the telephone. Pat informed Ernest that Mike was no longer interested but he (Pat) would take the land himself. Pat testified Ernest replied that he would "just as soon deal with one person." Ernest testified the one person he had in mind was the Geraets Brothers. Following the phone conversation, the same day, Ernest went to visit Pat. Ernest testified he told Pat at that time he did not want to go through with the sale. Pat testified that Ernest had only mentioned he was unsure what he wanted to do with the land.

[¶ 8.] On October 28, at approximately 1:00 p.m., Ernest went to Pat's home and told him "the deal was off." Ernest also told Pat he was not going to sell the land for anything less than $1,000 per acre. Ernest then went to Eng's office to advise him he no longer wished to sell. That same day Eng sent two letters, one to Pat and one to Mike, stating that the Halters had withdrawn the offer.

[¶ 9.] At some point near the end of October, Mike decided to allow Pat to purchase all of the property and gave him a copy of his purchase agreement. Pat crossed out Mike's name and signed both agreements. On the morning of October 28, Pat placed both agreements in his mailbox at the end of the driveway.

[¶ 10.] On October 29, Eng received the signed purchase agreements and earnest money check from Pat. The Halters refused to sell.

[¶ 11.] Pat and Mike, brought an action seeking specific performance to compel the Halters to sell the land according to the agreements notwithstanding Mike's assignment to Pat. The trial court denied specific performance, finding no contract. Geraets appeal, raising the following issues:

1.  Did the trial court err in holding that the "Offer and Purchase Agreement" documents that had been signed by the Halters were not contracts to sell, but only offers to sell?

2.  Did the trial court err in holding that Michael Geraets could not assign to Patrick Geraets his interest in the "Offer and Purchase Agreement" for which Michael Geraets was the designated purchaser?

3.  If the signed "Offer and Purchase Agreement" documents were merely offers to sell, did the trial court err in holding that the Halters effectively revoked their offer prior to acceptance by the Geraets?

4.  Did the trial court err in holding that the Halters were the "prevailing parties" entitled to an award of disbursements under SDCL 15–17–37 even though a money judgment was entered in favor of the Geraets on an alternative count for unjust enrichment?

## STANDARD OF REVIEW

[¶ 12.] A trial court's findings of fact will not be disturbed unless they are shown to be clearly erroneous. *Talley v. Talley*, 1997 SD 88, ¶ 19, 566 N.W.2d 846, 851; *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Knudsen v. Jensen*, 521 N.W.2d 415, 418 (S.D.1994). Under this standard, findings will not be disturbed unless, after a review of all the evidence, we are firmly and definitely convinced a mistake has been

made. *Talley,* 1997 SD 88, ¶ 19, 566 N.W.2d at 851; *Cordell v. Codington County,* 526 N.W.2d 115, 116 (S.D.1994). Conclusions of law are reviewed *de novo,* giving no deference to the trial court's determinations. *Id.*

## DECISION

[¶ 13.] **1. Whether there was an enforceable contract.**

[¶ 14.] Under SDCL 53–1–2, the elements necessary for formation of a contract are:

(1) parties capable of contracting;

(2) their consent;

(3) a lawful object; and

(4) sufficient cause or consideration.

Parties must be identifiable. SDCL 53–2–3. The trial court found the parties' initial negotiations did not constitute a contract because the critical element of who the buyer was had not been resolved. This information was later provided to attorney Eng and the purchase agreements were prepared for the parties to sign. The Halters signed the purchase agreements. The issue whether or not this was a final and complete agreement was contested at trial.

[¶ 15.] At trial, Mike Geraets testified: "I didn't know if I wanted to go through with the purchase at that time[.]" Pat testified, "when he [Ernest] called me I told him that Mike had hurt his back, and that we were wanting to buy the land, but we didn't know for sure who would take over that portion of Mike's[.]" The trial court reasoned: "If a contract had been reached, there's no discussion of who the buyer is, it's already bought. [I]f they have already reached a contract he [has] already bought, so he obviously did not believe that a contract had already been reached."

[¶ 16.] "An agreement is the result of a mutual assent of two parties to certain terms, and, if it be clear that there is no consensus, what may have been written or said becomes immaterial." *Watters v. Lincoln,* 29 S.D. 98, 100, 135 N.W. 712, 713 (1912) (citation omitted). "Consent is not mutual unless the parties all agree upon the same thing in the same sense." SDCL 53–3–

3. Ensuing negotiations evidence absence of intent that the purchase agreement constitutes a final and complete agreement. *See Sabow v. Hall,* 323 N.W.2d 861, 863 (S.D. 1982) (finding no final and complete agreement where negotiations between parties continued after offer and purchase agreement were signed); *cf. Rusch v. Kauker,* 479 N.W.2d 496, 500 (S.D.1991) (finding a contract where the purchase agreement contained all necessary terms and conditions and any remaining negotiations involved the contract for deed).

[¶ 17.] While the Geraets contend the entire time they intended to purchase the land, their conduct showed otherwise. "Whether a contract is formed is judged objectively by the conduct of the parties, not by their subjective intent. The question is not what the party really meant, but what words and actions justified the other party to assume what was meant." *Crince v. Kulzer,* 498 N.W.2d 55, 57 (Minn.App.1993) (citations omitted). The evidence showed a delay from September 19, 1997, when the purchase agreements were received, until October 28, 1997, when the agreements were finally signed and placed in the mail. During this time, the evidence showed the Geraets themselves were uncertain as to the future of their partnership and whether the land would be purchased and, if so, who would purchase it. When Ernest finally went to visit Pat to inquire on the status of the agreements, he was told by Pat's wife that Mike was contemplating quitting farming and the partnership would be dissolved.

[¶ 18.] Based upon the Geraets own testimony, the trial court determined ongoing discussions between Pat and Mike manifested no assent to be bound to a final agreement. Although there are factual disputes, the trial court is in the best position to assess the credibility of witnesses, weigh the conflicting evidence and observe the witnesses and the evidence first hand. *Cowan v. Mervin Mewes, Inc.,* 1996 SD 40, ¶ 15, 546 N.W.2d 104, 109; *In re Estate of Elliott,* 537 N.W.2d 660, 662 (S.D.1995). Upon review of the record, we find substantial evidence to support the conclusion of the trial court that no contract existed. Whenever an agree-

ment has not passed beyond the condition of negotiation, "[a]nd, if it is left doubtful from all the evidence in the case whether a contract was concluded or not, equity will not grant specific relief." *Watters,* 29 S.D. at 104, 135 N.W. at 713.*

### [¶ 19.] 2. Whether the Geraets were prevailing party under statute.

[¶ 20.] Geraets contend they are the prevailing party. While the Geraets lost the issue of specific performance raised under their complaint, they obtained payment from the Halters for the following: $888 chisel plowing, $468.59 spraying costs and approximately $66 for picking rock. SDCL 15–17–37 allows the prevailing party to recover disbursements. The trial court determined the Halters to be the prevailing party. "The prevailing party is the party in whose favor the decision or verdict is or should be rendered and judgment entered." *City of Aberdeen v. Lutgen,* 273 N.W.2d 183, 185 (S.D. 1979) (interpreting prevailing party under SDCL 15–15–1) (citation omitted).

[¶ 21.] The Geraets' original complaint sought the remedy of specific performance to enforce a purchase agreement. Only at the conclusion of trial did the Geraets make a motion for compensatory damages for costs incurred. Halters never objected to the payment of those costs, in fact, they offered to reimburse Geraets prior to this lawsuit. The payment of Geraets' costs was not a contested issue. Therefore, Halters were properly held to be the prevailing parties.

[¶ 22.] Based on our holding on issue one, we see no need to discuss issues two and three.

[¶ 23.] We affirm.

[¶ 24.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON,

Justices, concur.

---

* Geraets argue that Halters, by signing the purchase agreements and sending them to the Geraets, did all that was necessary to create an enforceable contract. *See McPherson v. Fargo,* 10 S.D. 611, 74 N.W. 1057 (S.D.1898). This argument presumes there was a final and complete agreement embodying the terms agreed to for the seller to sign. *Id.* at 1058. In the present case, there never was a final and complete agreement because the parties were of a different mind. Therefore, *Fargo* is inapplicable.