STATE, Respondent v. CATLETTE, Appellant

(221 N.W.2d 25)

(File No. 11316. Opinion filed August 22, 1974)

N. Dean Nasser, Jr., Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., Pierre, Thomas P. Tonner, State's Atty., Brown County, on the brief.

James A. Wyly, Richardson, Groseclose & Kornmann, Aberdeen, for defendant and appellant.

DOYLE, Justice.

This is an appeal from a jury verdict finding the defendant guilty of burglary in the third degree.

Two officers of the Aberdeen Police Department were on routine patrol during the early morning hours of January 6, 1973. At approximately 2 a.m., as they were circling a service station using a spotlight, they noted the glass in one of the back doors to the station was broken. At about the same time, the officers saw the defendant[1] in his vehicle leaving the parking lot located behind the service station. The officers, who had previously seen the defendant and his car in the neigborhood, stopped the defendant and arrested him for public intoxication. He was taken into custody and his vehicle was driven by a police officer to the

---

1. The defendant was known to have had two prior burglary convictions.

police station parking lot. No search was made of the defendant's vehicle at the service station. Approximately one hour after the arrest, two officers conducted a warrantless search of the defendant's vehicle and seized a tire iron and a small hatchet, the handle of which contained cuts with glass particles in it. These items were found beneath the front seat of the car, and glass particles were discovered on the floorboard of the driver's side of the vehicle. Based upon this evidence the defendant was charged with burglary in the third degree. The defendant contends the search and seizure were illegal and, therefore, the evidence obtained should have been suppressed. He further contends that the evidence introduced at the trial is insufficient to support a guilty verdict in this case.

The state argues that the search was conducted pursuant to a written policy[2] of the police department which states that all impounded vehicles must be searched in order to safeguard any valuables located therein and, thus, was an inventory search, and that the evidence introduced at trial is sufficient to sustain the verdict.

While we affirm the lower court's admission of the evidence for reasons to be stated later, we cannot agree with the state that this search was valid solely because of the Aberdeen Police Department regulation. In reaching this conclusion we rely mainly on Cady v. Dombrowski, 1973, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706, and United States v. Lawson, 1973, 8 Cir., 487 F.2d 468.

Cady involved an off-duty Chicago policeman who was involved in an auto accident near Kewaskum, Wisconsin. The

---

2. "Since the Aberdeen Police Department is directly responsible for all personal property seized, impounded and taken under our control it is necessary for us to take reasonable care to guarantee its safe return to its proper owner. As the Police Department is liable for loss or theft of this personal property it becomes necessary for us to inventory the property in order to protect the Police Department and the City of Aberdeen against any false claims for loss or theft.

"When the operator of a vehicle is arrested, his vehicle shall be driven or towed to the Police Department. Those items considered 'valuables' shall be removed, inventoried and placed in the property room for safe keeping. This shall include items not attached to the vehicle and are practical in size, weight and quantity to be so removed and stored."

Kewaskum police believed that Chicago police were required to carry their service revolvers at all times, and they wished to locate the weapon to keep it out of the hands of unauthorized persons—a legitimate desire to insure public safety. Since the off-duty policeman was comatose and in the hospital, and since the weapon was not on his person, the Kewaskum police searched the wrecked vehicle without consent and without a warrant to locate the revolver. The vehicle was being stored at a private garage without a police guard making access by vandals relatively easy. During this search several bloodstained items were discovered in the front seat and in the trunk of the car. These items linked the Chicago policeman to a murder of which he was eventually convicted.

█ While the opinion in Cady v. Dombrowski, supra, reveals that the search for the revolver was standard procedure, we do not believe that fact had any relation to the validity of the search. The admissibility of the evidence was founded on two grounds. First, there was *present* a "constitutionally reasonable", noncriminal justification for making an initial intrusion which placed the evidence in "plain view". This justification was the good faith desire to protect the public from a dangerous weapon. Secondly, there was *absent* all desire to obtain evidence for a criminal proceeding.[3] The fact that the search was standard

3. "Here the justification, while different, was as immediate and constitutionally reasonable as those in *Harris* [Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067] and *Cooper* [Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730]: concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle. The record contains uncontradicted testimony to support the findings of the state courts and District Court. Furthermore, although there is no record basis for discrediting such testimony, it was corroborated by the circumstantial fact that at the time the search was conducted Officer Weiss was ignorant of the fact that a murder, or any other crime, had been committed." 413 U.S. at 445, 93 S.Ct. at 2531, 37 L.Ed.2d at 718. In addition Justice Rehnquist noted that: "Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, *totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.* * * * The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory character of the latter as well as from the fact that the extensive, and often *noncriminal* contact with automobiles that will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714. (emphasis supplied)

procedure is oblique in relation to the line of thought that must be followed. The determinative point is whether the reason behind the standard procedure creates a "constitutionally reasonable" justification for the initial intrusion in light of the facts at hand.[4]

■ We must first look to see whether there is present a noncriminal "constitutionally reasonable" justification, whether or not manifested by a police regulation, that will uphold not only the initial intrusion but also the extent of that intrusion. Next, the record must show an absence of investigative motives on the part of the police in order to prevent law enforcement authorities with ostensibly valid motives from writing their own exception to the Fourth Amendment.

The very same regulation we are considering here was at issue in United States v. Lawson, 1973, 8 Cir., 487 F.2d 468, a post-Cady case. In Lawson the defendant was arrested at the Aberdeen Holiday Inn on a charge of writing bad checks. His locked car was in the motel lot and was taken to the Aberdeen police station. The next day the car was searched pursuant to the instant regulation and a .22 caliber revolver was found in the locked trunk. The defendant was indicted for transporting a stolen firearm in interstate commerce[5] and for transportation of a firearm from West Virginia to Aberdeen by a convicted felon.[6]

■ In United States v. Lawson, supra, the court recognized that "When determining the legality of an automobile search, a court must determine its reasonableness under all the circumstances presented * * *." 8 Cir., 487 F.2d 468. In discussing other cases which have held inventory searches valid, the court noted that they do not

4. We agree with the Eighth Circuit Court of Appeals when it states that "The Supreme Court has not decided whether an inventory search * * * would be considered reasonable under the Fourth Amendment. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) explicitly stated that the 'admissibility of evidence found as a result of a *search under the police regulation* is not presented by this case.' " United States v. Lawson, 1973, 8 Cir., 487 F.2d 468. (emphasis supplied)

5. 18 U.S.C.A. § 922(i).

6. 18 U.S.C.A. § 922(g).

"appear to have given consideration to the *scope* of the intrusion involved in the particular cases as measured by the exigencies of the situation. Rather, they appear to weigh heavily the asserted need to inventory to the exclusion of Fourth Amendment considerations. The *Fourth Amendment requires courts to* 'focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of private citizens.' (citation omitted)

"This approach, of necessity, requires a balancing of the need to search in a particular case against the scope of the particular intrusion." 8 Cir., 487 F.2d at 474. (emphasis supplied)

The court there went on to hold that

"While police custody may justify reasonable measures to protect the vehicle itself (*i. .e.,* rolling up the windows and locking the doors), or property within plain view in the automobile, such reasonable protective measures do not extend to breaking into a locked trunk." 8 Cir., 487 F.2d at 475.

The court's discussion in United States v. Lawson, supra, implies to us that in that case reasonableness ended with the removal of objects within plain sight—objects which when spotted by a passing vandal would provide the temptation for exploration into the vehicle and damage to its contents. Just as the situation in Cady v. Dombrowski, supra, demanded the locating of the revolver to protect the public, the facts in Lawson did not justify a search of the trunk merely to protect the police from potential liability.

In the instant case, we find that the scope of the intrusion here, if done for noninvestigative reasons, was reasonably related to the permissible purpose of preventing police liability. The record reveals that the hatchet and tire iron could possibly have been seen from outside the car.[7] They were in a position so that

---

7. The testimony at trial indicates that the tire iron was protruding slightly from beneath the seat.

the police in trying to remove possible temptation from vandals would have found the hatchet and tire iron in "plain view". See Cady v. Dombrowski, supra, and Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.

■ We do not believe, however, that the officers who searched the car were only thinking of possible police liability. The arresting officers testified at trial that the defendant was arrested so that the possible burglary could be investigated,[8] and that no search warrant was obtained because they believed the search at the police station was incidental to the arrest.[9] The implication is that if they were searching incident to an arrest their purpose was to gain evidence leading to the solution of the crime that prompted the arrest. In such a case we hold that the incidental purpose of avoiding police liability, which admittedly lies behind the police regulation, cannot constitutionally justify the investigative search here. To do so would be to allow "Fourth Amendment protection in this area * * * (to) approach the evaporation point." Chimel v. California, 1969, 395 U.S. 752, 765, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685, 695.

■ This is not to imply, however, that this search of Catlette's car does not fall under any exception to the Fourth Amendment warrant requirement. While the search cannot be justified as incident to an arrest,[10] it was conducted under conditions presenting probable cause and exigent circumstances. Cham-

---

8. "Q. Now, I believe you testified earlier at the preliminary hearing that you were suspicious and so you wanted to arrest him simply to hold him while you investigated the scene, is that correct?
"A. That is correct."

9. "Q. Well, let me sum it up. I believe that you testified once before that you did not get a search warrant because you considered this search as being incident to an arrest. Is that correct?
"A. That's correct.
"Q. And that's the only reason you didn't get a search warrant as far as you were concerned, you could have gotten one if it were necessary? Are those statements correct?
"A. Yes."

10. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 376 U.S. 364, at 367, 84 S.Ct. 881, at 883, 11 L.Ed.2d 777, at 780.

bers v. Maroney, 1970, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428. The trial court held that probable cause to arrest the defendant existed at the service station, and we too hold that probable cause to search the car was present. Broken glass was observed in the back door of the service station, a car was seen pulling out of the back lot—a place peculiarly located so that traffic not dealing with the service station would have no occasion to use it—and the defendant was known to have other burglary convictions. We think such facts would have justified a search at the service station.

█ It was held in Carroll v. United States, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551, that it is permissible to search an automobile without a warrant, given the existence of probable cause, "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." In Chambers v. Maroney, supra, the Supreme Court held that "The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured." 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 429. (Emphasis supplied) Having already determined the existence of probable cause, we find little difference between the "exigent circumstances" that existed at the station house in Chambers and those present here.

We also note that Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, is inapposite in this case. Coolidge involved a parked car that was unlikely to be moved before a warrant could have been issued. The police in that case knew in advance that a search would be conducted. In contrast the present situation is one of those instances where probable cause arises contemporaneously with the opportunity to search. The officers here had no advance warning that would allow them to get a warrant without losing the opportunity to search. [11]

█ We hold that the search was valid and that the evidence was properly admitted.

---

11. For an excellent analysis of this area see Paul M. Hubbard's comment "Auto Search: The Rocky Road from Carroll to Coolidge", 17 S.D.L.Rev. 98 (1972).

 Defendant's second assignment of error states that the evidence introduced at trial was insufficient to support a verdict of guilty. Admittedly, the State's case was circumstantial, but we said in State v. Scott, 1969, 84 S.D. 511, 173 N.W.2d 287:

> "To warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. (citations omitted) However, the last phrase of this rule does not mean that the evidence must be such as to exclude every possible hypothesis of innocence; rather, it requires only the exclusion of reasonable hypothesis of innocence. (citation omitted) As the court said in the Thomas opinion [State v. Thomas, 1960, 78 S.D. 568, 105 N.W.2d 549] we have examined the record with care and are compelled to the conclusion that under this record and in conformity with the rule announced, the jury could reasonably conclude defendants were guilty of the offenses charged. That was a function for a jury to determine in compliance with the dictates of State v. Bates, [76 S.D. 23, 71 N.W.2d 641], supra, where the court, quoting from a text and former opinion, stated:
>
> ' "where the facts offered in evidence by the plaintiff, if true, make out a prima facie case, the jury, and not the judge, ought to pass upon them." ' "

 The defendant has stated that other causes could have created the circumstances found here—the broken glass, the tools underneath the seat with their suspicious markings and the defendant's presence in the parking lot that night all could be inconsistent with the defendant's guilt—but he has failed to put forth any other specific explanation for these circumstances, and this court fails to see these facts as supporting any "reasonable hypothesis of innocence." The jury has passed upon these facts, and we see no reason to disturb its conclusion.

Affirmed.

All the Justices concur.