1998 SD 56

**Scott SPENNER, Plaintiff and Appellant,**

**v.**

**CITY OF SIOUX FALLS, SOUTH DAKO-TA, Sioux Falls Police Department, Bob Keisacker, Individually, And Various John Does, Individually, Defendants and Appellees.**

No. 20261.

Supreme Court of South Dakota.

Argued April 29, 1998.

Decided June 3, 1998.

Michael D. Bornitz and Timothy L. James of James & Associates, P.C., Yankton, for plaintiff and appellant.

Gary P. Thimsen and William G. Beck of Woods, Fuller, Schultz & Smith, P.C., Sioux Falls, for defendants and appellees.

KERN, Circuit Court Judge.

[¶ 1.] The circuit court granted summary judgment in favor of defendants. Scott Spenner appeals. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] In late 1995 and early 1996, a series of armed robberies occurred in the Sioux Falls area. As a result, relevant information involving these armed robberies was presented to various members of the Sioux Falls Police Department, including Officer Bob Keisacker (Keisacker). Included in this information was a physical description of the robbery suspect and the suspect's vehicle.

[¶ 3.] In the early evening hours of January 4, 1996, Scott Spenner (Spenner) was on his way to the Sioux Falls Brewing Company for a musical performance that he was to give later that evening. Keisacker was on routine patrol when he received a radio dispatch indicating that an individual, whose physical appearance matched that of the armed robbery suspect, was operating a pick-up truck which matched the description of the pick-up truck utilized by the robbery suspect.[1] In response to this radio dispatch, Keisacker followed Spenner south on Cliff Avenue near Rice Street. Keisacker then activated his patrol car's light bar and siren. However, Spenner did not immediately pull over and stop. Instead, Spenner continued driving somewhat erratically by stopping and then pulling forward again. Eventually, he proceeded through the intersection at Rice and Cliff Streets and pulled over.[2] By the time this final stop was completed, several patrol cars had converged on the scene.[3]

[¶ 4.] Because Spenner was operating a vehicle matching the description of a vehicle utilized by an armed robbery suspect, was driving the vehicle in an erratic and irregular manner, and failed to stop promptly upon the activation of the patrol car's light bar and siren, Keisacker determined that a felony stop was the prudent course of action under the circumstances. Spenner was instructed to roll down his window, place his hands outside, and throw any weapon outside the vehicle. Keisacker then ordered Spenner to exit the vehicle, turn his back to the officers, kneel in the road, and place his hands on his

---

1. The vehicle Spenner was driving at this time was a dark blue 1984 Nissan pick-up with a white topper.

2. In his deposition, Spenner explained that although he saw the patrol car behind him with flashing lights and sirens, he was not certain the police were following him, as another car was between him and the patrol car. When Spenner looked again, he discovered there were then two patrol cars behind him. Yet Spenner still failed to pull over immediately. Rather, Spenner simply continued driving, apparently looking for a safe area in which to stop his vehicle.

3. Four additional Sioux Falls Police Officers were present at the scene when this incident occurred.

head. At this time, Keisacker and other officers had their handguns pointed directly at Spenner.

[¶ 5.] Keisacker then approached Spenner, placed his arms behind his back, handcuffed him, and searched him for a weapon. Keisacker's search revealed that Spenner was carrying no weapon. Spenner was then placed into the back of the patrol car and briefly questioned. Upon determining that Spenner was not the individual suspected of effectuating the series of armed robberies, Keisacker removed the handcuffs, gave Spenner a business card, and released him. The entire incident, from the stop of Spenner's pick-up truck to his subsequent release, encompassed a period of approximately twelve minutes.[4]

[¶ 6.] Spenner subsequently initiated an eight-count action against defendants alleging false imprisonment, assault, battery, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, punitive damages, and violation of civil rights pursuant to Title 42 U.S.C.A. § 1983. The circuit court entered summary judgment in favor of defendants on all counts.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review for a grant or denial of summary judgment is well-settled.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any

basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat. Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993) (quoting *Waddell v. Dewey Cnty. Bank*, 471 N.W.2d 591, 593 (S.D.1991)). When reviewing a grant of summary judgment, we are not bound by the trial court's factual findings, but rather must undertake an independent review of the record. *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 6, 556 N.W.2d 68, 70. However, affirmance is suitable if any legal basis exists to support the trial court's decision. *St. Paul Fire & Marine Ins. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Kern v. City of Sioux Falls*, 1997 SD 19, ¶ 4, 560 N.W.2d 236, 237 (citing *State Dep't of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D. 1989)).

[¶ 8.] Both parties present legal argument as to what evidence constitutes the record properly considered by the circuit court. Spenner contends that the circuit court's opinion contains numerous factual statements not contained within the record. SDCL 15–6–56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

As this Court is not bound by the circuit court's factual findings when reviewing a grant of summary judgment, it is unnecessary to address Spenner's question as this Court will make an independent review of the record before the circuit court.

[¶ 9.] The parties also challenge the content and scope of the appellate record before this Court. Defendant contends that Spenner's separate appendix violates SDCL 15–26A–60(8), which provides that the "ap-

---

4. The record reflects that the stop was commenced at 7:21 p.m. and Keisacker left the scene at 7:33 p.m.

pendix may include the judgment, order or decision in question, any relevant portions of the pleadings, instructions, findings or opinion, and any other parts of the record to which the parties wish to direct the particular attention of the Court." This Court had consistently held that it will not consider facts outside the settled record. *See Nauman v. Nauman,* 336 N.W.2d 662, 664 (S.D. 1983). As Spenner's appendix is comprised entirely of documents not contained in the settled record, it is stricken in its entirety.[5] Moreover, footnotes three and four of defendant's brief, summarizing deposition testimony not before this Court, will be entirely disregarded.

## ANALYSIS AND DECISION

[¶ 10.] On appeal, Spenner claims that the circuit court erred in granting summary judgment on all causes of actions.

[¶ 11.] **Did Keisacker have the necessary "specific and articulable suspicion" to justify the brief stop of Spenner's automobile?**

[¶ 12.] Spenner first contends that the stop of his vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution and Article VI, § 11, of the South Dakota Constitution, because Keisacker had no specific and articulable suspicion of a violation before effectuating the stop.

5. At the summary judgment motion hearing, both parties referenced deposition testimony that was not introduced into evidence. Effective July 1, 1997, SDCL 15–6–5(g) changed existing filing requirements to wit:

No deposition (except notices to take depositions), interrogatories, requests for documents, requests for admissions, and answers and responses thereto shall be filed with the clerk of the court.

Any discovery materials necessary for the disposition of any motion filed with the court shall be attached as an exhibit and filed with the party's motion.

If any party designates any or all of any deposition as evidence to be offered in the trial of any case, such deposition shall be filed with the clerk of the court at the same time as that party's designation.

Depositions used by a party only for the purpose of contradicting or impeaching the testimony of deponent as a witness, pursuant to § 15–6–32(a)(1), shall not be filed unless otherwise ordered by the judge presiding at the hearing or trial.

[¶ 13.] The stop of an automobile and the detention of its occupants is a seizure within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In accordance with the dictates of these constitutional provisions, a police officer may not stop a vehicle without a reasonable suspicion for doing so. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, it should be emphasized that the reasonable suspicion required to make a stop is less than the probable cause required to issue a warrant or make an arrest. *State v. Lownes,* 499 N.W.2d 896, 898 (S.D.1993). The existence of reasonable suspicion is a question of law which is fully reviewable by this Court. *See State v. Lownes,* 499 N.W.2d at 898 (citing *State v. Smith,* 477 N.W.2d 27, 31 (S.D.1991)).

[¶ 14.] We recently articulated the standard for automobile stops:

The reasonable suspicion standard was extended to automobile stops in South Dakota in *State v. Anderson,* 331 N.W.2d 568 (S.D.1983). A police officer must have a specific and articulable suspicion of a violation before a stop will be justified.

*State v. Cuny,* 534 N.W.2d 52, 53 (S.D.1995)

[T]he factual basis required to support a stop for a "routine traffic check" is mini-

All depositions which have been read or offered into evidence by agreement of parties, or at the trial or submission of the case to the court, shall become a permanent part of the file.

After the ultimate conclusion of the case, depositions not offered or received into evidence may be withdrawn by the parties taking the deposition. All unclaimed depositions may be disposed of by the clerk after giving thirty days' notice to the attorneys of record of the clerk's intention to do so.

As depositions are no longer routinely filed with the clerk of courts, it is imperative for counsel to introduce into evidence those depositions on which they rely for support of their motions. These depositions or relevant portions thereof should be submitted at the time motions are filed in order to give the trial court an adequate opportunity to review discovery material before the motion hearing. Likewise, failing to introduce supporting deposition testimony at the hearing forecloses meaningful review by this Court.

mal.... All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

*State v. Krebs,* 504 N.W.2d 580, 585 (S.D. 1993). Therefore, the issue becomes whether Keisacker had a "specific and articulable suspicion" that Spenner violated the law before stopping him. Under the facts of this case, we find that Keisacker possessed two justifications for conducting the investigative stop of Spenner.

[¶ 15.] First, Keisacker was provided with a radio dispatch identifying an individual whose physical appearance and vehicle matched that of an armed robbery suspect. We have stated, "A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties." *Id.* at 585 (citing *State v. Burkman,* 281 N.W.2d 436, 439 (S.D. 1979)). And second, he observed Spenner operating his vehicle in an erratic, irregular, and evasive manner after he attempted to pull him over. In light of the information received from the radio dispatch and Spenner's refusal to promptly pull over and stop his vehicle, the stop was grounded upon a "specific and articulable suspicion," and not upon a "mere whim, caprice, or idle curiosity."

### [¶ 16.] Was Spenner illegally detained beyond that period which was necessary for the stop?

[¶ 17.] False imprisonment is an "unlawful detention or restraint of a person against his ... will." *Darrow v. Schumacher,* 495 N.W.2d 511, 522 (S.D.1993). This Court has previously opined that "[a]n action for false imprisonment cannot be maintained if the imprisonment was under legal authority." *Id.* at 522. As we have previously stated, Keisacker's initial stop of Spenner's vehicle was initiated under legal authority, as it was conducted within the context of the "reasonable suspicion" standard.

[¶ 18.] The scope and duration of Keisacker's investigation was also justified under the circumstances. This Court has recently stated that when making an investigatory stop:

Law enforcement officers are entitled to diligently investigate to verify a vehicle's registration. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). A brief delay while running a computer check on a vehicle registration or a driver's license via radio is permissible. *State v. Hewey,* 144 Vt. 10, 471 A.2d 236 (1983); 4 Wayne R. LaFave, *Search and Seizure* § 10.8(a), at 64 (2d 1987).

*State v. Ramirez,* 535 N.W.2d 847, 849 (S.D. 1995).

[¶ 19.] Here, the entire incident, from the stop of Spenner's vehicle to his eventual release, encompassed a period of approximately twelve minutes. Keisacker's actual detention of Spenner was promptly terminated upon receiving verification that Spenner was not the individual suspecting of effectuating the series of armed robberies. The twelve minute detention and investigation of a possible armed robbery suspect was not shown to be unreasonable.

[¶ 20.] Spenner also asserts that Keisacker's actions constituted not merely an investigative detention, but an arrest for which Keisacker had no probable cause. There is no bright-line rule to determine when an investigative stop becomes an arrest. *U.S. v. Parr,* 843 F.2d 1228, 1231 (9th Cir.1988). Rather, in determining whether stops have transformed into arrests, the "totality of the circumstances" must be examined. *U.S. v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990) (quoting *United States v. Baron,* 860 F.2d 911, 914 (9th Cir.1988)). "An investigative stop may become an arrest if it lasts for an unreasonably long time or the officers use unreasonable force in executing it." *United States v. Miller,* 974 F.2d 953, 956 (8th Cir.1992). And as might be expected, the ultimate conclusion in such cases is fact-specific.

[¶ 21.] However, we have already determined that under the facts of this case, the brief twelve minute stop to investigate a possible armed robbery suspect was not un-

reasonable. Furthermore, the utilization of force by the officers was reasonable under the "totality of the circumstances." Therefore, Spenner's assertion that he was arrested is wholly without merit.

[¶ 22.] **Did the officers' use of force constitute that which was greater than necessary under the circumstances?**

[¶ 23.] Under South Dakota statutory authority,[6] the force used by a police officer is unlawful when it becomes greater than necessary to carry out his duties. *See United States ex rel. Means v. Solem,* 646 F.2d 322 (8th Cir.1980). When conducting an investigatory stop, "officers may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo.'" *See United States v. Jones,* 759 F.2d 633, 636 (8th Cir.1985).

[¶ 24.] Keisacker and the other officers were confronted with a possible armed robbery suspect who had minutes earlier evaded Keisacker's attempts to conduct a vehicle stop. Based upon the facts known to the officers at that time, it was reasonable to believe that Spenner may be armed. As such, the officers' acts of approaching a suspected armed robbery suspect with guns drawn, having him kneel on the street, handcuffing him, and placing him in the police vehicle for a twelve-minute period, did not constitute unreasonable force under the circumstances.

[¶ 25.] **Are the officers and City of Sioux Falls protected by the Doctrine of Qualified Immunity?**

[¶ 26.] In its grant of summary judgment, the circuit court found that both the officers and City of Sioux Falls were protected by the doctrine of qualified immunity. "Qualified immunity is a legal question to be decided by the court, it is particularly amenable to summary judgment." *Horne v. Crozier,* 1997 SD 65, 565 N.W.2d 50 (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991)(per curiam)). "To find whether qualified immunity applies, the test is to ask if the officer's conduct violated clearly established

statutory or constitutional rights a reasonable officer would have known at the time." *Id.* (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)). This Court has emphasized that "because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' ... we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 52 (emphasis in original).

[¶ 27.] The United States Supreme Court has stated:

> [W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.

> \*    \*    \*    \*    \*    \*

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in [the following] sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. (citations omitted).

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 530–31 (1987). *See also Gainor v. Rogers,* 973 F.2d 1379, 1382 (8th Cir.1992)("This [qualified immunity analysis] allows ample room for a good faith mistake by the officer since his conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer").

[¶ 28.] Under the factual scenario presented in this case, we must answer two questions in order to determine whether the circuit court correctly determined that defendants were entitled to a qualified immunity

---

6. SDCL § 22–18–2 states, "To use or attempt or offer to use force or violence upon or toward the person of another is not unlawful when necessarily committed by a public officer in the performance of any legal duty or by any other person assisting him or acting by his direction."

determination. First, was Keisacker's decision to briefly stop and detain Spenner "objectively reasonable?" And second, was the use of force "objectively reasonable?"

[¶ 29.] Based upon the facts and analysis previously articulated, we find that the officers would have an "objectively reasonable" justification for stopping Spenner's vehicle. Similarly, the amount of force utilized by the officers was not unreasonable and therefore, "necessary to protect their personal safety and to maintain the status quo." *Jones*, 759 F.2d at 636. *See also Olinger v. Larson, City of Sioux Falls and Satterlee*, 134 F.3d 1362 (8th Cir.1998)(upholding the district court's dismissal of plaintiff's action based upon a finding of qualified immunity for the arresting officer and supervising officers).

[¶ 30.] Because Spenner's brief fails to discuss his invasion of privacy, negligent infliction of emotional distress, and intentional infliction of emotional distress causes of action, they are deemed waived. "Failure to brief [a] matter supported by case or statutory authority constitutes a waiver of that issue." *Weger v. Pennington County*, 534 N.W.2d 854, 859 (S.D.1995) (citing *Tjeerdsma v. Global Steel Bldgs. Inc.*, 466 N.W.2d 643, 644 n. 2 (S.D.1991)). As such, the trial court's grant of summary judgment on each of these respective causes of action is affirmed.

## CONCLUSION

[¶ 31.] The circuit court was not shown to be in error in granting summary judgment. The decision of the circuit court is affirmed.

[¶ 32.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 33.] KERN, Circuit Judge, for SABERS, J., disqualified.

