2000 SD 135

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Adam Paul RINEHART, Defendant and Appellant.**

**No. 20967.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Oct. 18, 2000.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, for plaintiff and appellee.

Timothy W. Bjorkman and Mike C. Fink of Bjorkman Law Offices, Bridgewater, for defendant and appellant.

MILLER, Chief Justice

[¶ 1.] Following a court trial, Adam Paul Rinehart was found guilty of DUI and third offense DUI. We affirm.

## FACTS

[¶ 2.] At 1:05 a.m. on July 3, 1998, Officer DeBoer saw Rinehart driving south on Sertoma Avenue near its intersection with 26th Street in southwest Sioux Falls, South Dakota. The posted speed limit was 40 miles per hour.

[¶ 3.] DeBoer followed Rinehart's car and paced its speed for six blocks. He estimated that Rinehart's speed was between 20 and 25 miles per hour. DeBoer did not observe any traffic violations.

[¶ 4.] DeBoer activated his red lights and stopped Rinehart's vehicle. The slow speed of Rinehart's vehicle raised concerns for DeBoer that the driver might have a medical problem such as a stroke. "My whole intention," DeBoer testified, "was to stop him and see if he was all right." Of secondary concern was the fact that in DeBoer's experience, driving under the speed limit "could" be an indicator of a possible drunk driver.

[¶ 5.] When DeBoer approached Rinehart he detected the odor of alcohol and noted his bloodshot, watery eyes. Following field sobriety tests, DeBoer arrested Rinehart for driving under the influence, a violation of SDCL 32–23–1.

## ISSUE

[¶ 6.] **Did the trial court err when it denied Rinehart's motion to suppress the evidence obtained following the stop of Rinehart's vehicle?**

[¶ 7.] In *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973) the United States Supreme Court observed that local police officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Consequently "[u]nder appropriate circumstances a law enforcement officer may be justified in stopping a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity." *State v. Brown,* 509 N.W.2d 69, 71 (N.D.1993). If a police officer has a demonstrable reason to be-

lieve that a driver may be unfit to drive for medical or other reasons, a temporary stop is justified for the limited purpose of investigating the person's well-being. *McDonald v. State*, 759 S.W.2d 784, 785 (Tex. App.–Fort Worth 1988).

[¶ 8.] In this case the trial court did not err in denying Rinehart's suppression motion. Before stopping Rinehart, DeBoer observed his excessively slow speed at 1:09 a.m. which raised, in his experience and knowledge, concerns over the driver's medical condition. As the court in *State v. Garbin*, 325 N.J.Super. 521, 739 A.2d 1016, 1019 (N.J.Super.A.D.1999) noted:

> A police officer's observation of a person operating a motor vehicle in a manner that indicates something may be wrong with the vehicle or its driver is one recognized circumstance in which the police may take appropriate action in the performance of their community caretaking responsibilities. For example, in *State v. Martinez*, 260 N.J.Super. 75, 78, 615 A.2d 279 (App.Div.1992) we stated that a police officer's observations of a motor vehicle being driven at less than 10 m.p.h. "suggest[ed] a number of objectively reasonable concerns," including that "something might be wrong with the car ... [or] its driver." Consequently, we held that these concerns justified "the minimal intrusion involved in a simple inquiry stop." *Id.* Similarly, in *State v. Goetaski*, 209 N.J.Super. 362, 507 A.2d 751 (App.Div.1986), we upheld the validity under the community caretaking doctrine of a stop of a person who was driving slowly on the shoulder of a state highway with his left turn directional signal flashing. We concluded that observations of such unusual operation of a vehicle provided a reasonable basis for the police officer to believe that there was something wrong with the vehicle or its driver. *Id.* at 366, 507 A.2d 751.

[¶ 9.] Here, Rinehart was traveling 20–25 miles per hour late at night on a deserted street with a posted speed limit of 40 miles per hour. There were no extraneous factors such as other traffic or adverse weather conditions attributing to his slow pace in any way. Under these circumstances, Officer DeBoer was justified in assuming that something else, such as a medical emergency or an automotive malfunction, may be occurring. In fact, he indicated that he was initially more concerned that Rinehart might have a possible medical problem, rather than having a suspicion that he might be intoxicated. DeBoer stated that his whole intention in stopping Rinehart was to see if he was all right.

[¶ 10.] We recognize that "[t]he 'community caretaking' exception should be cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory search for criminal evidence." *Com. v. Waters*, 20 Va.App. 285, 456 S.E.2d 527, 530 (1995). In this case, however, the trial court did not find fault with DeBoer's motives and was able to judge the officer's credibility as he testified. *See Geraets v. Halter*, 1999 SD 11, ¶ 18, 588 N.W.2d 231, 234 (stating "the trial court is in the best position to assess the credibility of witnesses, weigh the conflicting evidence and observe the witnesses and evidence first hand.")

[¶ 11.] Based on the circumstances presented, DeBoer, as part of his role in community caretaking, was justified in stopping Rinehart to make sure everything was all right. Therefore, the trial court did not err in denying Rinehart's motion to suppress.

[¶ 12.] The judgment is affirmed.

[¶ 13.] KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 14.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 15.] Although officers may stop a vehicle while exercising their "community caretaking function," the facts do not justi-

fy applying that concept here. *See Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973); *see also State v. Catlette,* 88 S.D. 406, 221 N.W.2d 25, 28 n. 3 (1974). An officer's subjective explanation for stopping or detaining a driver does not control Fourth Amendment analysis. Courts are required to "make an objective assessment of the officer's actions" when determining if a stop was reasonable. *United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990) (citing *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177 (1978)).

[¶ 16.] Applying the community caretaking exception to the facts of this case ignores the requirement of objective reasonableness when assessing an officer's actions. *Id.* Officer DeBoer's stated "primary justification" for stopping Rinehart, his health, is not sufficiently borne out in the record. DeBoer's subjective motives, no matter how honestly held, do not affect Fourth Amendment protections. It is vital to recognize that "[t]he 'community caretaking' exception should be cautiously and narrowly applied to minimize the risk that it will be abused or used as pretext for conducting an investigatory search for criminal evidence." *Commonwealth v. Waters,* 20 Va.App. 285, 456 S.E.2d 527, 530 (1995).

[¶ 17.] Given the absence of support in the record to justify the community caretaking exception, we must determine the validity of this stop under our traditional Fourth Amendment analysis. The purpose of the Fourth Amendment is "not to eliminate all contact between police and the citizenry, but 'to prevent arbitrary and oppressive interference' by enforcement officials with the privacy and personal security of individuals." *United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). There must be a balancing of the

intrusion on a person's Fourth Amendment rights against legitimate governmental interests. *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). To balance these interests, law enforcement must have a reasonable suspicion of a violation to make a brief traffic stop. *Terry v. Ohio,* 392 U.S. 1, 31–32, 88 S.Ct. 1868, 1888, 20 L.Ed.2d 889, 911 (1968); *State v. Cuny,* 534 N.W.2d 52, 53 (S.D.1995). An officer must support a stop with an articulable suspicion of a violation. *State v. Herrboldt,* 1999 SD 55, ¶ 7, 593 N.W.2d 805, 808. DeBoer's stop of Rinehart's vehicle is not supported by an articulable suspicion of a violation and was unjustified as a matter of law.

[¶ 18.] I also join Justice AMUNDSON'S dissent.

AMUNDSON, Justice (dissenting).

[¶ 19.] The majority is now adopting a new exception to the Fourth Amendment—the community caretaking exception. Under the facts of this case, this exception should not be embraced. The majority relies on three cases: *State v. Brown,* 509 N.W.2d 69 (N.D.1993); *State v. Garbin,* 325 N.J.Super. 521, 739 A.2d 1016 (1999); and *State v. Goetaski,* 209 N.J.Super. 362, 507 A.2d 751 (1986), which are neither dispositive nor persuasive.[1] In fact, in reviewing these cases, it becomes evident that they are clearly distinguishable.

[¶ 20.] In *Garbin* police were dispatched to defendant's residence because smoke was emanating from the defendant's garage area. Believing there to be a fire, the police entered the garage to find defendant inside his car spinning the tires. Defendant was noticeably drunk and was arrested for DUI. The standard employed by the court in determining the applicability of

---

1. In reviewing the authorities relied upon by the majority, no decision defines what conduct does or does not constitute "community caretaking." It is fair to assume, however, that whenever a police officer is on duty, he or she is performing a community caretaking function. Thus, the community caretaking exception swallows the rule for Fourth Amendment protection.

the community caretaking exception was whether the officer had a "reasonable basis for concern." In *Garbin*, the officers were called to the scene, they personally observed smoke and could logically conclude a fire was present. These facts support a "reasonable basis for concern." The court found that "[u]nder these circumstances, the police officers would have been remiss in the performance of their community caretaking responsibilities if they had failed to investigate further." *Garbin*, 739 A.2d at 1019. Thus, based on an objective standard the officers had a reasonable basis for concern.

[¶ 21.] In *Goetaski*, an officer observed a vehicle traveling at less than ten miles an hour on the shoulder of a public highway with its left-turn blinker on at 4 a.m. The officer followed the vehicle for one-tenth a mile before making a stop. While driving on the shoulder is not a violation of a statute, it is "designed for emergency use but not ordinarily to be used for vehicular travel." NJSA 39:1–1. The Court found that based on these facts, the officer had a reasonable belief that something was out of the ordinary, and that "[p]eople don't drive on the shoulder of the road, especially with their left turn signals on in the middle of the night in a rural area if there's not something wrong." *Goetaski*, 507 A.2d at 752. Thus, the officer had a "reasonable concern," that the car had malfunctioned, for making the stop.

[¶ 22.] In *Brown*, the North Dakota Supreme Court addressed the community caretaker exception and found that it did not apply when the officer's assertion of community caretaking was merely pretextual. The trial court discounted the officer's testimony that he thought he had seen smoke coming from Brown's vehicle and that Brown's vehicle was traveling at a slow rate of speed. The North Dakota Supreme Court determined that the offi-

cer's reason for pulling over the vehicle was to investigate a DUI and, therefore, traditional Fourth Amendment standards governed the stop. While the *Brown* court was willing to recognize the community caretaking exception, on the facts presented such an exception did not apply.

[¶ 23.] *Garbin*, *Goetaski*, and *Brown* all reinforce the notion that an officer must investigate dangerous situations. As this Court recognizes, there are certain circumstances where an officer's duties include acting outside the criminal investigation context. But this call to duty, nonetheless, does not diminish constitutional safeguards inalienable to all persons. Thus, it could be said that there must be an objective reasonable basis or "reasonable concern" by the officer before a stop is legally justified under the Fourth Amendment, regardless of the situation.[2]

[¶ 24.] This Court has previously discussed Fourth Amendment rights for vehicle stops.

"The stop of an automobile and the detention of its occupants is a seizure within the meaning of the Fourth and Fourteenth Amendments. *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610 (citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Law enforcement "may not stop a vehicle without a reasonable suspicion for doing so." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "However, it should be emphasized that the reasonable suspicion required to make a stop is less than the probable cause required to issue a warrant or make an arrest." *Id.* (citing *State v. Lownes*, 499 N.W.2d 896, 898 (1993)). "The existence of reasonable suspicion is a question of law which is fully reviewable by this Court." *Lownes*, 499 N.W.2d at 898.

2. An "objective reasonable basis" or "reasonable concern" should not be confused with the legal standard of reasonable suspicion. If the Court is to adopt the "community caretaking" exception, then it must have some objec-

tive standard. Not only does the majority's opinion support the "community caretaking" exception, but also because of the deficient factual basis to make such a stop, it adopts a subjective standard, relying solely on what

[T]he factual basis required to support a stop for a "routine traffic check" is minimal.... All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which taken together with references from those facts, reasonably warrant [the] intrusion[.]"

*Spenner,* 1998 SD 56 at ¶ 14, 580 N.W.2d at 610–11 (alterations in original) (quoting *State v. Krebs,* 504 N.W.2d 580, 585 (S.D.1993)).

[¶ 25.] Turning our attention to the case at hand, Officer DeBoer stated that he was concerned that Rinehart may have been experiencing a stroke or that the vehicle had malfunctioned. Neither assumption is reasonable. If Rinehart was experiencing any type of physical onset, the vehicle would not have remained within the lane in which Rinehart was driving. Some sort of erratic movements of the car would have been observed if Rinehart was under physical impairment. The record does not indicate such circumstances existed. Nor did the trial court rely on a violation of SDCL 32–25–5.1 a basis to stop Rinehart.[3]

[¶ 26.] Likewise, Officer DeBoer had no objective reasonable belief that Rinehart's car had malfunctioned. Smoke coming from the car was not observed; auto parts were not dropping from underneath the car; Rinehart did not have his flashers on indicating trouble nor was Rinehart flagging down the officer to request help. All Officer DeBoer saw was a car moving at a pace within the prescribed speed limit.

[¶ 27.] A vehicle traveling within the posted speed but 15 mph below the speed *limit* is not a reasonable indication that police intervention is warranted. "The mere fact that a driver is traveling at a slower than usual speed on a roadway does not by itself create a reasonable suspicion of driving under the influence of alcohol or other illegal activity." *State v. Brown,* 509 N.W.2d 69, 71 (N.D.1993). In other words, Officer DeBoer must have had an objective basis to stop Rinehart's vehicle. This is true whether the stop is part of the community caretaking function or to investigate criminal activity. Thus, extrinsic objective evidence must demonstrate that illegal activity is afoot or community caretaking is needed before an officer can make a constitutionally permissible stop.

[¶ 28.] Because Officer DeBoer had no independent articuable facts that Rinehart's car had malfunctioned or that Rinehart was in physical peril, he had no legal justification to pull him over. "[H]owever well-intentioned the stopping may have been in this case, the risk for abuse is real." *Doheny v. Comm. of Public Safety,* 368 N.W.2d 1, 2 (Minn.App.1985). The risk of abuse, in this case, cannot be overcome by mere whim no matter how heartfelt the officer may be. An objective standard, where articuable facts are proffered, is the only benchmark for which we judge whether a search or seizure is consistent with the auspices of the Fourth Amendment. An officer's subjective motive cannot supplant objective "reasonableness" of the Fourth Amendment.

[¶ 29.] This Court has gone too far. This Court's pronouncement all but vitiates any Fourth Amendment protection. Officers in training will be taught to use the magic language at trial: "I was acting in my community caretaking capacity when I stopped the defendant's vehicle." As endorsed by this Court, employment of

Officer DeBoer later claimed he actually thought.

**3.** As the facts indicate, it was 1 a.m. and the only traffic in the vicinity was Officer DeBoer and Rinehart. There is nothing in the record to support that the stop was reasonable because no impeding actually occurred. Likewise, the potentiality of a violation of a statute is not the test. If it were, then almost all stops would be valid based on the potentiality to violate traffic ordinances. Nowhere in the statute does it read that the potentiality of impeding traffic is a violation. Thus, the majority is left with reasonable suspicion of DUI as its sole basis to stop Rinehart's vehicle. Under the majority's holding, driving 15 mph under the speed limit equates to reasonable suspicion. I agree with other courts that have held slow speed, by itself, is not enough to make a legally justifiable stop under the Fourth Amendment. *See infra.*

such a maneuver would allow police carte blanche power to stop anyone, at any time, for any reason. Certainly, a citizen's constitutional right to be free from unreasonable search and seizure should not depend on a catch phrase of the arresting officer. With the adoption of this rule, under these facts, a police state is not too far away. An officer is always acting within a community caretaking function whether investigating a crime or helping an elderly lady cross the street. The rule announced today begs the question: when is an officer not acting within its community caretaking function?

[¶ 30.] Therefore, I dissent.