2001 SD 93

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Christina HODGES, Defendant and Appellee.**

**No. 21730.**

Supreme Court of South Dakota.

Argued April 26, 2001.

Decided July 18, 2001.

Mark Barnett, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellant.

Gregory T. Brewers of Frieberg, Rudolph & Nelson, Beresford, SD, Attorneys for defendant and appellee.

SABERS, Justice.

[¶ 1.] Christina Hodges was a passenger in a vehicle stopped for excessive

speed. After the vehicle was stopped, Hodges exited the vehicle and proceeded into an adjacent building despite North Sioux City Police Officer Jason Nelson's repeated orders to stop. Officer Nelson followed Hodges and entered the women's restroom to confront her, believing she was attempting to flush a controlled substance. Hodges was placed under arrest for obstruction of a law enforcement officer. The search incident to that arrest revealed a controlled substance. The trial court suppressed the controlled substance, reasoning it was the fruit of the poisonous tree. We reverse and remand.

## FACTS

[¶ 2.] On February 16, 2000, between eleven and midnight, Officer Nelson noticed a vehicle traveling in excess of the speed limit. The vehicle stopped in the Dakota Rose Casino parking lot. Officer Nelson pulled into the lot behind the vehicle with his lights activated. The passenger, Hodges, exited the vehicle and began walking toward the casino entrance. The driver of the vehicle also attempted to exit the vehicle. Officer Nelson ordered the driver of the vehicle to remain inside the vehicle. The driver complied with the request.

[¶ 3.] Officer Nelson testified he was approximately fifteen feet from the vehicle and Hodges when he ordered her to stop in a normal tone. When she did not turn or respond and "appeared to walk faster" he increased his tone. Officer Nelson testified "I asked her to stop at least four times prior to her getting to the door." When asked if he was yelling at her, Officer Nelson indicated "the last two or three times I was yelling." Hodges did not stop. She entered the casino door approximately thirty to forty feet away from the officer. Officer Nelson immediately followed Hodges into the casino. "I asked where the female went that came running in here. [The bartender] said she ran towards the bathroom."

[¶ 4.] Officer Nelson pounded on the restroom door, identified himself as a police officer and ordered Hodges out. With no response, Officer Nelson entered the restroom and noticed Hodges standing in a single stall with the door open. Unable to see her hands, he demanded that Hodges show them. Hodges did not comply with this order and instead turned away from him and backed toward the corner of the stall. Losing sight of Hodges and believing she was attempting to conceal something, Officer Nelson entered the stall.

[¶ 5.] He observed Hodges with her pants unbuttoned and partially down. Officer Nelson then ordered her to pull up her pants. After no response, he pulled up her pants for her. There was a brief struggle as Officer Nelson attempted to force Hodges to show her hands. Officer Nelson placed Hodges under arrest for obstruction of a law enforcement officer.

[¶ 6.] Hodges later explained that she had needed to use the restroom. However, there was no evidence she used the restroom at the casino or within the first hour at the jail. In response to Officer Nelson's question whether she was attempting to conceal anything, she responded "I don't use drugs." Officer Nelson conducted a search of Hodges following the arrest and discovered a contact case in her purse containing a controlled substance.

[¶ 7.] The trial court granted Hodges' motion to suppress the controlled substance, reasoning it was the product of an unconstitutional search and seizure. The State filed this intermediate appeal raising two issues:

1. Whether the trial court erred in holding there was no basis for an investigative stop of Hodges.

2. Whether the trial court erred in suppressing the drug evidence under the "fruit of the poisonous tree" doctrine.

## STANDARD OF REVIEW

[¶ 8.] We have recently clarified our standard for reviewing a motion to suppress. A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. *State v. Stanga*, 2000 SD 129, ¶ 8, 617 N.W.2d 486, 488. *See also Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996) (standard of review for questions under the Fourth Amendment); *United States v. Khan*, 993 F.2d 1368, 1375 (9th Cir.1993). We review findings of fact under the clearly erroneous standard. *State v. Almond*, 511 N.W.2d 572, 573–74 (S.D.1994). Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610. Whether a law enforcement officer had a lawful basis to conduct a warrantless search incident to an arrest is reviewed as a question of law. *State v. Sleep*, 1999 SD 19, ¶ 6, 590 N.W.2d 235, 237.

[¶ 9.] **1. WHETHER THE TRIAL COURT ERRED IN HOLDING THERE WAS NO BASIS FOR AN INVESTIGATIVE STOP OF HODGES.**

[¶ 10.] The trial court determined that Officer Nelson had no legally justifiable reason to detain Hodges. Additionally, the trial court determined as a matter of law:

1. Every person has a right to oppose an illegal arrest, and may engage in flight in order to do so.

2. Mere flight by a person does not authorize that person's arrest as a fugitive, nor may it be considered as a circumstance to establish probable cause for an arrest.

3. The conduct of Officer Nelson exceeded the bounds of a reasonable search and seizure of [Hodges] when he entered the women's restroom of the Dakota Rose Casino.

4. The State failed to meet its burden to prove that the detention, arrest and search of [Hodges] fell within one of the exceptions to the warrant requirement.

[¶ 11.] "The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and is implicated when a vehicle is stopped." *State v. Vento*, 1999 SD 158, ¶ 18, 604 N.W.2d 468, 470. It is not disputed that Officer Nelson justifiably stopped the vehicle for a traffic violation in which Hodges was a passenger. Hodges urges that while the stop was legitimate, there was no basis to require her to remain at the scene nor to subsequently detain and then arrest her for obstructing a law enforcement officer. In support of her position, Hodges cites to authority indicating that a citizen is free to avoid contact with police if they desire. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229, 236 (1983). We find that authority inapplicable to these facts.

[¶ 12.] We recognize that in an everyday encounter, a citizen has the right to: choose to not speak with police officers, decline to listen to them and instead go about their business just as they would with any other person. *See id.* A citizen "may not be detained even momentarily without reasonable, objective grounds for doing so." *Id.* However, the situation is

different when the setting of that encounter changes.

[¶ 13.] A passenger in a vehicle justifiably detained by law enforcement is in a much different situation then a mere passerby on the street. *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41, 48 (1997). As recognized by the United States Supreme Court:

> [D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

*Id.*

[¶ 14.] In so holding, the United States Supreme Court approvingly analogized that "although no special danger to the police is suggested" the officer is justified in ordering a passenger out of the vehicle as "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* We find this rationale equally applicable to prevent a passenger from walking away from the vehicle without reason.[1] *See also State v. Richards*, 1998 SD 128, ¶ 11, 588 N.W.2d 594,

596 (recognizing that a "stop of a vehicle is a seizure of all its occupants.").

[¶ 15.] Hodges maintains that she was within her rights to ignore the officer and to walk away from the vehicle, as there was no basis for any investigative stop.[2] The United States Supreme Court has recently stated that circumstances surrounding an unprovoked flight may provide an officer with a reasonable suspicion for further investigation. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 577 (2000). The Court further determined that this rationale is consistent with Florida v. Royer which held "that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police." *Id.* Instructively, the Court further recognized that "[e]ven in Terry v. Ohio, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 SCt 1868, 20 L.Ed.2d 889 (1968)).

■ [¶ 16.] Our standard for determining whether Officer Nelson had a reasonable suspicion for further investigation is an objective one. "Whether reasonable suspicion exists when the stop was made is a determination based on an objective standard: would the facts observable to the

---

1. The trial court found that Officer Nelson was not acting for officer safety purposes when he detained Hodges. However, the authority cited by the State recognizes that control over passengers is necessary to prevent the escalation of uncontrollable situation that could jeopardize an officer's safety. *See Wilson*, 519 U.S. at 415, 117 S.Ct. at 882, 137 L.Ed.2d at 48. For officer safety, it is reasonable to require the passengers in a lawfully stopped vehicle to remain at the scene until the officer is able to assess the situation.

2. . Hodges attempts to compare this stop with the stop of a person in a vehicle who chooses to turn away from a police roadblock without committing a violation of the law. *See State v. Thill*, 474 N.W.2d 86, 89 (Sabers, J. dissenting). These situations are distinguishable. Neither the driver nor passengers of a lawfully stopped vehicle would be justified to "ignore the police," as Hodges asserts she was entitled to do. Without a lawful stop of a vehicle or person, all citizens may go where they wish unless there is reasonable suspicion for further investigation.

law enforcement officer at the time of the stop entitle an officer of reasonable caution to believe the action taken was appropriate?" *State v. Vento*, 1999 SD ¶ 8, 604 NW2d at 470. A subjective belief is not the proper standard. *Id.* ¶ 11 (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 98 (1996) "subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis.")

[¶ 17.] Here, Officer Nelson was entitled to require the passenger to remain at the scene. This limited detention is a right to temporarily freeze the situation. Exercising this right, Officer Nelson requested Hodges to remain at the vehicle four times, at least twice yelling a stop command to Hodges with no response. At this point, the brief detention to control the scene began to change as Officer Nelson witnessed events which created "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989). "Actual proof that criminal activity is afoot is not necessary." *Hamlin v. Commonwealth*, 33 Va.App. 494, 534 S.E.2d 363, 366 (2000). Things may have been different if Hodges had explained that she urgently needed to use the restroom. Her failure to provide a reasonable explanation for hurrying away was inexcusable. Officer Nelson was then justified in making a *Terry* type stop of Hodges. "*Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in the light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S.

143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1971).

[¶ 18.] Despite Hodges assertion to the contrary, "*Terry* accepts the risk that officers may stop innocent people." *Wardlow*, 528 U.S. at 126, 120 S.Ct. at 677, 145 L.Ed.2d at 577. While attempting to effectuate this *Terry* type stop, Officer Nelson was faced with Hodges' flight to a nearby building. Only after following Hodges did Officer Nelson learn she had run to the restroom. He knocked on the door and ordered Hodges out, without response from her. Officer Nelson then entered the restroom and observed Hodges engaging in activity that created a reasonable suspicion criminal activity was afoot. If during or after a *Terry* stop an officer learns facts rising to the level of probable cause the arrest is constitutionally firm. *Id.* Hodges refusal to comply with the order to show her hands and attempt to avoid the officer culminated in probable cause for her arrest for obstruction of a law enforcement officer.

[¶ 19.] Therefore, we reject the trial court's holding and conclude that under these circumstances, Officer Nelson had reason to detain and subsequently had probable cause to arrest Hodges.

[¶ 20.] 2. **WHETHER THE TRIAL COURT ERRED IN SUPPRESSING THE DRUG EVIDENCE UNDER "THE FRUIT OF THE POISIONOUS TREE" DOCTRINE.**

[¶ 21.] We conclude that Officer Nelson was justified in ordering Hodges to remain at the scene. Additionally, he had reasonable suspicion to investigate further when she refused to comply with his order to remain at the scene. In attempting to effectuate an investigative stop, Officer Nelson observed events that created probable cause for an arrest for obstruction of a law enforcement officer. As such, the contraband found in Hodges' possession

was constitutionally seized as a search incident to a lawful arrest.

[¶ 22.] "A search incident to arrest permits a warrantless search of an individual and of the area within [her] immediate vicinity following [her] arrest, so long as the search is contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *State v. Meyer*, 1998 SD 122, ¶ 25, 587 N.W.2d 719, 724 (citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). In such circumstances, the search is justified to secure any weapons and prevent the destruction or concealment of evidence. *Id.*

[¶ 23.] Our inquiry involves only whether probable cause for the arrest existed and not whether the evidence would support a conviction. *See Adams*, 407 U.S. at 148, 92 S.Ct. at 1921, 32 L.Ed.2d at 618 (1972). Officer Nelson had probable cause for arresting Hodges for "impair[ing] or hinder[ing] the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer." SDCL 22–11–6. As such, the search of the purse carried by Hodges into the restroom was legitimate and the contact case containing the controlled substance found therein was admissible.

[¶ 24.] We reverse and remand.

[¶ 25.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 26.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 27.] The majority has all but eviscerated general principles of Fourth Amendment jurisprudence with this decision. No longer can an ordinary citizen avoid contact with law enforcement as he or she wishes.

[¶ 28.] The majority relies upon *Maryland v. Wilson* for the position that a passenger must submit to law enforcement's authority for merely being part of the stop of the driver. In *Wilson*, however, there appeared to be an articulable individual suspicion for ordering the occupants out of the vehicle. In *Wilson*, the state trooper, with his lights activated, followed the vehicle for a mile and a half before it stopped. The trooper also observed the occupants ducking below sight level, and then reappear. In addition, instead of remaining in the vehicle, the driver met the officer halfway and upon returning to the vehicle the front-seat passenger was sweating and appeared nervous. Based on these facts, the *Wilson* court reasoned that the danger to the officer is greater when occupants are present; therefore, compelling occupants out of the vehicle for safety reasons did not offend Fourth Amendment protections. In the case before us, however, there is no factual basis to support a finding of a heightened danger to the officer's safety due to an occupant fleeing the scene. Quite simply, there was no observed suspicious activity in the case before us.

[¶ 29.] In *Wilson*, a further distinguishable fact is that the trooper observed a crack vial fall from the passenger's person when exiting the vehicle. Here, the contraband was not discovered until after Officer Nelson chased Hodges into a bathroom stall, placed her under arrest and subsequently searched her purse. The facts of this case do not support the rationale behind *Wilson* that in order to preserve officer safety, all occupants must exit the vehicle when ordered to do so by law enforcement. Here, officer safety, whether real or apparent, is of no concern. If Hodges had already exited the vehicle and was moving in a direction away from the

officer how is that rationale being fulfilled? I fail to see how the rationale enunciated in *Wilson* applies to the case before this Court.[3]

[¶ 30.] In addition, Officer Nelson had no individualized, particular suspicion attributable to Hodges other than her choice to avoid police inquiry. *Cf. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Florida v. Royer, the United States Supreme Court announced that an involuntary detention, however brief, is not permissible even if the citizen acts in a way to avoid such contact:

> The person approached [ ] need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

*Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. Without a legal justification for the stop of Hodges, Officer Nelson had no authority to place her under arrest or search the purse.

[¶ 31.] This case is another example of this Court's seemingly willingness to disregard basic constitutional protections afforded by the Fourth Amendment. *See e.g. State v. Rinehart*, 2000 SD 135, 617 N.W.2d 842 (adoption of a "community caretaking function" exception to probable cause to justify the detention of a slow moving vehicle). "In the absence of any basis for suspecting [one] of misconduct, the balance between public interest and [one's] right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). To do otherwise would allow the police to dictate one's constitutional right to be left alone. As Justice Stevens wrote in his dissenting opinion in *Maryland v. Wilson*, "Today, however, the Court takes the unprecedented step of authorizing seizures that are unsupported by any individualized suspicion whatsoever." 519 U.S. at 422, 117 S.Ct. at 890. I agree with Justice Stevens that "Fourth Amendment protections to our citizens cannot be sacrificed." *State v. Sleep*, 1999 SD 19, ¶ 24, 590 N.W.2d 235, 242 (Sabers, Amundson, J.J., dissenting) (citing *State v. Shearer*, 1996 SD 52, ¶ 23, 548 N.W.2d 792, 797). As predicted, this Court again would rather continue on a path of eroding an individual's rights than protecting them. Just as in *State v. Vento*, the erosion continues.

[¶ 32.] Therefore, I dissent.

---

3. The *Wilson* court was specifically asked by Maryland to hold that "an officer may forcibly detain a passenger for the duration of the stop." 519 U.S. at 415, n.3, 117 S.Ct. at 886, n. 3. The Court, however, decided to "express no opinion upon it," as that issue was not directly before it. *Id.* For this Court to rely on *Wilson* as binding precedent or controlling is unpersuasive.