2003 SD 147

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Debra F. SULLIVAN, Defendant and Appellant.**

**No. 22840.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Dec. 17, 2003.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Bryan T. Andersen, Office of Public Defender, Rapid City, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Debra Sullivan appeals her convictions for resisting arrest and obstructing a law enforcement officer. We affirm in part and reverse in part.

### FACTS

[¶ 2.] On the night of July 21, 2002, four juveniles (two boys and two girls) were violating their curfew and causing a minor disturbance at a trailer park in rural Pennington County just outside the city limits of Box Elder. When the juveniles ignored requests to quiet down, one of the trailer park residents contacted law enforcement to disperse them. Pennington County Deputy Sheriff Robert Robertson was dispatched to the scene, and Box Elder Police Officer Andrew Devault proceeded to assist him.

[¶ 3.] Officer Devault was the first officer on the scene. The group of juveniles began to scatter as soon as they saw him. Deputy Robertson arrived at about that time, got out of his vehicle, identified himself and repeatedly instructed the juveniles to stop. The two girls complied while one of the boys fled the scene. The other boy, M.S., began yelling at Officer Devault stating that he would not talk with Deputy Robertson. M.S. continued his screaming and yelling despite instructions from Devault that he had to speak with Robertson because it was "his call." At about that time, M.S.'s mother, Debra Sullivan, sped into the trailer park in her car. Sullivan came to an abrupt stop and jumped out of the vehicle leaving the motor running and the driver's door open. She immediately began yelling at Robertson, telling him that he could not speak to her son. At the same time, M.S. was continuing his yelling and screaming as he ran to the rear door on the driver's side of his mother's vehicle. Sullivan then stood between Deputy Robertson and her son and extended her arms and legs out to physically obstruct Robertson and prevent him from speaking with M.S. All the while Sullivan was yelling at Robertson, telling him that he could not speak to M.S., but that Officer Devault could.

[¶ 4.] Deputy Robertson twice informed Sullivan that he wanted to speak to M.S. and that if she did not step aside he would arrest her for obstructing a law enforcement officer. At that point, M.S. "bolted" toward the back of his mother's car where Officer Devault detained him. Robertson then informed Sullivan that she was under arrest. Rather than submitting, Sullivan jumped back into her car through the open driver's door and locked her arms by wrapping them through the steering wheel. Robertson was concerned that Sullivan was going to put the car into gear and hurt someone. He was also con-

cerned that Sullivan was attempting to elude him. He reached into the vehicle and restrained Sullivan's left arm in a wrist lock. Robertson then informed Sullivan "numerous, numerous times ... to get out of the vehicle and to stop resisting[.]" Sullivan continued to pull away from Robertson and to use her foot to work her way further inside her vehicle. After the two had struggled for several minutes, Robertson used "pressure point techniques" on Sullivan's sternum to forcefully extract her from the vehicle as she continued her screaming, yelling and kicking. Once Sullivan was out of the vehicle, Robertson handcuffed her and placed her under arrest for resisting arrest.

[¶ 5.] As a result of these events, Sullivan was charged with one count of resisting arrest and one count of obstructing a law enforcement officer. A jury trial was held in magistrate court on October 31, 2002. At the close of the State's case and at the close of all the evidence, Sullivan's counsel moved for a judgment of acquittal on both counts based upon insufficiency of the evidence. The motions were denied and guilty verdicts were returned on both counts. The magistrate later sentenced Sullivan to a suspended sentence of 120 days in the county jail on each count with the two sentences to run concurrently. Sullivan appealed her convictions to the circuit court, which affirmed in an order entered April 3, 2003. Sullivan now appeals to this Court.

## ISSUE

[¶ 6.] **Did the trial court err in denying Sullivan's motions for a judgment of acquittal?**

[¶ 7.] Sullivan argues that the trial court erred in denying her acquittal motions.

In reviewing a [trial] court's decision to deny a motion for judgment of acquittal, we inquire whether the State presented sufficient evidence on which the jury could reasonably find the defendant guilty of the crime charged. More specifically, we ask if there was sufficient evidence in the record that, if believed, would be adequate to sustain a conviction beyond a reasonable doubt. In a sufficiency challenge, we will set aside a jury verdict only when "the evidence and the reasonable inferences to be drawn therefrom fail to sustain a rational theory of guilt." We will not resolve conflicts in the testimony, pass on the credibility of witnesses, or weigh the evidence.

*State v. Guthrie*, 2001 SD 61, ¶ 47, 627 N.W.2d 401, 420–21 (citations omitted).

[¶ 8.] Sullivan argues that the trial court erred in denying her acquittal motion on the resisting arrest charge because no evidence was presented that she used physical force or violence against Deputy Robertson during the events leading to her arrest.

[¶ 9.] Sullivan was charged with resisting arrest under SDCL 22–11–4(1) which provides in pertinent part:

Any person who intentionally prevents or attempts to prevent a law enforcement officer ... acting under color of his authority, from effecting an arrest of the actor ... by:

(1) Threatening to use physical force or violence against the law enforcement officer ...

\* \* \*

is guilty of resisting arrest. Resisting arrest is a Class 1 misdemeanor.

[¶ 10.] In reviewing subdivisions (1) and (2)[1] of this statute in *Hall v. City of Watertown ex rel. Police*, 2001 SD 137, n. 2, 636 N.W.2d 686, 688, this Court noted that, "defendants can be guilty of resisting arrest only if they (1) intend to do so *and either* (2a) threaten to use force or violence *or* (2b) create a risk of physical injury." (emphasis original). However, the creation of a risk of physical injury was not at issue in this case because that element arises out of subdivision (2) of SDCL 22–11–4 and Sullivan was only charged under subdivision (1), the threat of force or violence provision. Thus, in order to convict Sullivan, the State was required to prove that she intended to resist arrest and that she *threatened* to use force or violence. *Hall, supra*. However, no evidence of a threat to use force or violence was presented in this case.

[¶ 11.] A "threat" is defined as, "1. An expression of an intention to inflict pain, injury, evil, or punishment. 2. An indication of impending danger or harm." The American Heritage College Dictionary 1411 (3d ed.2000). *See also State v. Ducheneaux*, 2003 SD 131, ¶ 9, 671 N.W.2d 841, 844 (statutory language is given its plain, ordinary and popular meaning). To "threaten" is "1. To express a threat against. 2. To be a source of danger to; menace. 3. To give signs or warning of; portend. 4. To announce the possibility of in a threat.—*intr.* 1. To express or use threats. 2. To indicate danger or harm." *Id.*

[¶ 12.] The facts of this case reveal no expressions, indications, signs, warnings or announcements by Sullivan of any intention to inflict pain, injury, evil, punishment, danger, menace or harm on Robertson. The evidence only reflects that Sullivan was trying to get away from Robertson and was struggling with him in actual resistance to his attempts to take her into custody. Actual resistance, however, is not the actionable element of resisting arrest as defined by SDCL 22–11–4(1). Rather, it requires the threat of force or violence as discussed above.

[¶ 13.] This is not to suggest that physical acts by an arrestee can never constitute a threat under SDCL 22–11–4(1). It is not difficult to envision situations where an arrestee raises his arms in a fighting stance, actually swings at the officer, or gives some other indication of resistance that also indicates a threat to use force or violence. In such situations, the arrestee's actions could be tantamount to a *threat* of force or violence. However, in this particular case, Sullivan's actions never rose to that level. Robertson himself testified on direct examination that there was no threat of force or violence:

Q And what was she doing while you were sweeping her out of the vehicle?

A Screaming and yelling and kicking.

Q Okay, and at any point in time, did she make any contact with you by screaming, yelling, or kicking?

A The yelling, of course, it hurt my ears.

Q Sure.

---

1. SDCL 22–11–4(2) provides:
   Any person who intentionally prevents or attempts to prevent a law enforcement officer or jailer acting under color of his authority, from effecting an arrest of the actor or another, by:
   * * *
   (2) Using any other means which creates a substantial risk of causing physical injury to the law enforcement officer, jailer or any other person;
   is guilty of resisting arrest. Resisting arrest is a Class 1 misdemeanor.

A But the kicking, I don't recall her actually making any contact with me.

Q Okay. Was she kicking directly at you?

A No, it was more of a—what's the best way to explain it, it wasn't an offensive or defensive maneuver, but a struggling-type maneuver.

Q Okay, and what about when she was in the car, you made a comment that she was kicking while she was in the car, was she kicking directly at you at that time?

A At that time, not kicking directly at me, what she was doing was kicking her leg, her free leg in an attempt to try to push inward toward the inside of the vehicle and away from me, as she was pulling her arm.

Q Okay, was there a point in time when she was kicking or swinging, hitting of that nature directly at you?

A No, there was not.

[¶ 14.] Robertson expressly conceded that there was no threat of force or violence in his cross-examination:

Q And, and you just gave us that, and again nothing in the report and I believe you testified that Debra wasn't kicking at you, she was simply kicking the floor of the car or something else to try and get leverage?

A She was kicking her feet and actively resisting.

Q But you previously testified that Debra didn't threaten to use physical force or violence against yourself or anyone else at this point?

A No, she was just *actively resisting.*[2] (emphasis and footnote added)

[¶ 15.] No other State witness testified differently than Robertson with regard to the absence of a threat of force by Sullivan. Thus, the State cannot claim any better version of the facts than testified to by Robertson. *See State v. Frey,* 440 N.W.2d 721, 727 (S.D.1989)(defendant not entitled to any better version of facts than he himself testifies to). According to Robertson's testimony, while Sullivan might have actively resisted arrest, her conduct did not constitute a threat of force or violence against him or any other person. Thus, as discussed above, Sullivan's simple resistance was not, by itself, sufficient to constitute resisting arrest under SDCL 22–11–4(1). The element of a threat of force or violence was lacking, and the trial court should have granted Sullivan's motion for a judgment of acquittal on the resisting arrest charge.

[¶ 16.] The State argues that Sullivan's act of grasping her steering wheel constituted "resisting force of pulling away from the officer" and that this met the required element of force in the resisting arrest statute. In support of its contention, the State cites the Ohio case of *Garfield Hts. v. Simpson,* 82 Ohio App.3d 286, 611 N.E.2d 892 (1992). In *Garfield Hts.,* the Ohio Court of Appeals held that a defendant's act of physically seizing his steering wheel met the element of force required by that state's resisting arrest statute. However, the Ohio law on resisting arrest was different than SDCL 22–11–4(1). In

---

2. The State's attempt to address the threat element falls short. The State defines a threat as "overt actions calculated or serving to make a person fearful" and asserts that Sullivan's kicks and struggle were "certainly threatening." *See* The American Heritage College Dictionary 1265 (2d ed.1985)("threaten" defined). However, Robertson never testified that they were threatening or made him fearful or that they appeared to be calculated to make him fearful. Rather, he testified that her actions were neither offensive nor defensive, but mere active resistance.

the Ohio case, the elements of resisting arrest required the actor to, "recklessly or by force resist or interfere with the lawful arrest of oneself or another." *Garfield Hts.*, 611 N.E.2d at 895. Thus, mere forceful resistance was sufficient to constitute resisting arrest. No additional threat of force was required as it is under SDCL 22–11–4(1). While active resistance or forceful resistance of arrest might fulfill traditional notions of what constitutes resisting arrest or might meet the elements of Ohio law, they are not sufficient for a conviction under the threat element of SDCL 22–11–4(1).

[¶ 17.] Again, this is not to state that Sullivan's actions could not have been prosecuted under any provision of law. It appears that a charge under subdivision (2) of SDCL 22–11–4 would have been appropriate. Under that subdivision, a showing of a threat of force was not necessary. Instead, the jury could have considered whether Sullivan's struggle with Robertson behind the wheel of a running motor vehicle created "a substantial risk of causing physical injury" to Robertson or other persons under SDCL 22–11–4(2). However, the State did not charge Sullivan under SDCL 22–11–4(2). That failure was fatal to Sullivan's conviction for resisting arrest under the facts of this case, and the trial court erred in denying Sullivan's motion for a judgment of acquittal on that charge.

[¶ 18.] Sullivan also contends that the trial court erred in denying her acquittal motion on the obstructing a law enforcement officer charge. She argues that the evidence failed to show that Deputy Robertson was acting under color of his official authority when she prevented him from talking to her son.

[¶ 19.] Sullivan was charged with obstructing a law enforcement officer under SDCL 22–11–6, which provides in pertinent part:

[A]ny person who, by threatening to use violence, force or physical interference or obstacle, intentionally obstructs, impairs or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer ... *acting under color of his official authority* ... is guilty of obstructing a law enforcement officer.... Obstructing a law enforcement officer ... is a Class 1 misdemeanor. (emphasis added).

[¶ 20.] Sullivan contends that Robertson was not acting under color of his official authority when she prevented him from talking to her son because her son had already made it clear that he did not want to talk to Robertson. However, Sullivan failed to cite any authority for this argument, and this Court could consider it waived for that reason alone. *See State v. Banks*, 387 N.W.2d 19, 24 (S.D.1986)(failure to cite supporting authority waives issue on appeal).

[¶ 21.] Even if Sullivan's argument was properly presented, it is unsupported by settled law. This Court most recently outlined the principles applicable to a law enforcement officer's investigative stop of a citizen in *State v. Hodges*, 2001 SD 93, 631 N.W.2d 206. In *Hodges*, the Court clearly indicated that, in an everyday encounter, a citizen has the right to choose not to speak with an officer, to decline to listen to the officer, and to go about his or her business just as the citizen would do with any other person. However, the Court also indicated that reasonable, objective grounds to suspect a violation of law may justify a brief detention of an individual in order to determine identity or to maintain the status quo while more information is obtained. The Court further recognized that, "circumstances surrounding an unprovoked flight may

provide an officer with a reasonable suspicion for further investigation." *Hodges,* 2001 SD 93 at ¶ 15, 631 N.W.2d at 210 (citing *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

[¶ 22.] All of these factors were present here. A complaint that juveniles were causing a disturbance at a trailer court was lodged with law enforcement. Consequently, Deputy Robertson was dispatched to the scene to investigate, and the juveniles disbursed immediately upon Robertson's arrival. This complaint and the unprovoked flight clearly provided Robertson with reason to suspect that a violation of law might have occurred. Under these circumstances, Robertson had the authority to briefly detain the juveniles to determine their identities and maintain the status quo while he obtained more information. Thus, Robertson's attempts to speak to Sullivan's son were clearly taken under color of his official authority notwithstanding the son's expressions of unwillingness to speak to Robertson. The trial court did not err in denying Sullivan's acquittal motion for obstructing a law enforcement officer.

[¶ 23.] Affirmed in part and reversed in part.

[¶ 24.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, participating.