2005 SD 90

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Douglas WILLSON, Defendant and Appellant.**

No. 23228.

Supreme Court of South Dakota.

Considered on Briefs on April 25, 2005.

Decided Aug. 3, 2005.

Lawrence E. Long, Attorney General, Frank Geaghan, Assistant Attorney Gen-

eral, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Joseph M. Kosel and Manuel J. deCastro, Jr., Office of Lawrence County Public Defender, Deadwood, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Douglas Willson appeals the restitution provisions of his sentence for resisting arrest. We affirm.

FACTS

[¶ 2.] This case arose out of a confrontation between Willson and two police officers at a convenience store in the City of Whitewood on July 18, 2003. Willson, who appeared to be intoxicated, was inside the convenience store at approximately 6:00 p.m. panhandling customers for money while his girlfriend waited for him in their pickup parked outside the store. After twice being asked to leave by the cashier, Willson was approached by the Whitewood Police Chief who was off-duty and happened to be in the store. The chief phoned an on-duty officer, summoned her to the scene and then followed Willson outside the store where he spoke to Willson and his girlfriend who was seated in the driver's seat of the pickup. As the three conversed, Officer Wickenheiser, the on-duty officer, arrived, got out of her patrol car and approached the group. The chief instructed Wickenheiser to speak to Willson about what had been going on in the store and to get his "information," referring to Willson's identification, address, telephone number, etc.

[¶ 3.] Officer Wickenheiser approached Willson, confirmed his name and mentioned that she wanted to talk to him about the theft of some beer from a beer truck the previous evening. Willson had been a suspect in the crime and Wickenheiser wanted to tell him that, as a result of the investigation, he was no longer a suspect. Willson, however, did not seem to understand Wickenheiser and repeatedly told her that he was not a thief. Wickenheiser then asked Willson to have a seat in her patrol car so that she could get his information. Willson became belligerent and told her that he did not have to go "f——g anywhere" with her. Wickenheiser asked Willson not to use foul language and again asked him to have a seat in her car. At that point, Willson walked to the passenger side of his pickup, opened the door and started to get inside. Before Willson could enter his vehicle, Wickenheiser shut the pickup door, told Willson he could not leave and again told him that he would have to come with her for a little bit. At that time, Willson seemed to calm down and began to walk toward the patrol car.

[¶ 4.] As Willson and Officer Wickenheiser made their way to the patrol car, Wickenheiser asked Willson for his I.D. and took out her pad so that she could begin making notes. Willson pulled out his wallet, gave Wickenheiser his I.D. and then noticed a man pumping gas and yelled at him, "Tell her I'm not a thief, to leave me alone!" After Willson's outburst, Wickenheiser again asked him to come with her. Willson turned toward her, took a step, looked at her and said, "You f——g c——, I'm going to kick your ass." When Wickenheiser asked Willson if he was threatening her, he replied, "You're f——g right I'm threatening you, you better get ready."

[¶ 5.] At Willson's threat, Officer Wickenheiser dropped her notepad and Willson's identification and began to reach for Willson's arm with one hand as she reached for her handcuffs with the other. Wickenheiser advised Willson that he was under arrest for disorderly conduct, but Willson swung at her with his left hand. Wickenheiser avoided the punch and

grabbed Willson's hand and forearm with both of her hands. At that point, the police chief, who had been talking to Willson's girlfriend, became aware of the situation and rushed to assist Wickenheiser.

[¶ 6.] The two officers struggled with Willson, repeatedly instructing him to "get on the ground." Eventually, all three individuals fell to the ground. Officer Wickenheiser fell backwards, bending her wrist as she went down, and the weight of the other two individuals came down on her ankle. Despite her injuries, Wickenheiser continued struggling to subdue Willson who had the police chief pinned on the ground and was repeatedly pummeling him in the head with his fist and with a plastic mug he had been carrying. At one point the police chief told Willson he was "pissing [him] off" and Willson replied, "Well, let's just see how pissed off I can get you." Wickenheiser grabbed one of Willson's arms to pull him away from the chief and Willson hit her on the wrist several times with his mug to force her to let go. Wickenheiser stepped back from the struggle, pulled out her pepper spray, grabbed Willson around the shoulders, pulled his chin back and sprayed him in the eyes. Ignoring repeated commands to quit resisting and to "back off," Willson got up off of the police chief and began lunging toward Wickenheiser. Willson's movement gave the chief time to get up off of the ground and to grab one of Willson's arms as Wickenheiser grabbed the other. The two officers were then able to handcuff Willson and to place him in the patrol car.

[¶ 7.] Even after being placed in the patrol car, Willson remained "uncontrollable" and continued "cussing and swearing." When Wickenheiser reached in the car to try to connect Willson's seat belt, he bit at her and head butted her, bloodying her nose. Wickenheiser finally drove Willson to jail in nearby Deadwood and endured a barrage of expletives and threats from Willson during the entire trip.

[¶ 8.] As a result of these events, Willson was indicted for two counts of aggravated assault and one count of resisting arrest. A complaint was also filed charging Willson with one count of disorderly conduct. Willson's jury trial was held on December 3 and 4, 2003. The jury returned verdicts convicting Willson of resisting arrest, but acquitting him on the aggravated assault and disorderly conduct charges. The trial court sentenced Willson to one year in the county jail with nine months suspended on various terms and conditions including payment of restitution in an amount to be determined at a restitution hearing. The restitution hearing was held on February 17, 2004. The State presented testimony from Officer Wickenheiser concerning her injuries, medical expenses and lost wages. The trial court subsequently entered findings of fact, conclusions of law and an order requiring Willson to pay restitution of $18,018.77 in connection with Wickenheiser's damages. Willson appeals.

## ISSUE ONE

[¶ 9.] **Did the trial court err in ordering Willson to pay restitution for Officer Wickenheiser's damages?**

[¶ 10.] Under SDCL 23A-28-1, it is the policy of this State that criminal violators make "restitution" to the victims of their criminal activities. "Restitution" is "full or partial payment of pecuniary damages to a victim" including: "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event[.]" SDCL 23A-28-2(4) & 23A-28-2(3). A "victim" is defined as: "any person ... who has suffered pecuniary damages as a result of the defendant's criminal activities[.]" SDCL

23A–28–2(5). " 'Criminal activities' includes any crime for which there is a plea of guilty or verdict of guilty upon which a judgment of conviction may be rendered and any other crime committed ... which is admitted by the defendant, whether or not prosecuted. ...." SDCL 23A–28–2(2). In *State v. Joyce*, 2004 SD 73, ¶ 16, 681 N.W.2d 468, 471, this Court held that these statutes require establishment of a "causal connection between a defendant's crime and a victim's damages" to support an award of restitution. Willson argues that the State failed to establish that causal connection here. We disagree.

[¶ 11.] In *Joyce*, the victim's car was stopped waiting to make a left hand turn when the defendant rear-ended her vehicle. The defendant fled the scene, but was later apprehended. He pled guilty to leaving the scene of an accident and was ordered to pay some $13,000 in restitution for the victim's medical and vehicle damages. On appeal, the defendant argued that the trial court erred in its restitution award because the victim's damages were not caused by his leaving the scene of the accident. Following the causal connection requirement in the restitution statutes, this Court agreed with the defendant and reversed that portion of the judgment ordering restitution for the victim's medical and vehicular damages.

[¶ 12.] *Joyce* was premised on the Iowa Supreme Court's decision in *State v. Starkey*, 437 N.W.2d 573 (Iowa 1989). In *Starkey*, the defendant hit a victim who was changing a tire on her vehicle. The defendant did not stop, but was later apprehended and pled guilty to leaving the scene of a personal injury accident. After the victim's leg was amputated, the judgment against the defendant was amended to include restitution for the victim's medical expenses. The Iowa Supreme Court reversed the restitution award holding that there was no evidence that the defendant's act of leaving the scene either caused or aggravated the victim's injuries.

[¶ 13.] Clearly the causal connection necessary to support the restitution awards in *Joyce, supra* and *Starkey, supra*, was lacking because restitution was awarded for crimes committed *after* the infliction of the injuries in those cases. Here, however, restitution was awarded for a crime that did inflict injuries on the victim. Willson was convicted of resisting arrest by threatening to use physical force or violence against a law enforcement officer in violation of SDCL 22–11–4(1).[1] This Court explored the "threat" element of this statute in *State v. Sullivan*, 2003 SD 147, 673 N.W.2d 288 and concluded that it could include a physical component. In *Sullivan*, we reversed the resisting arrest conviction of a woman who repeatedly pulled away from the arresting officer's grasp as she was sitting in the driver's seat of her vehicle. At one point the woman actually locked her arms in the vehicle by wrapping them around the steering wheel. In reversing the woman's conviction, we determined that despite her actual physical resistance, there were no actions constituting a threat against the arresting officer because none of her actions indicat-

---

1. SDCL 22–11–4 provides:

    Any person who intentionally prevents or attempts to prevent a law enforcement officer or jailer, acting under color of his authority, from effecting an arrest of the actor or another, by:

    (1) Threatening to use physical force or violence against the law enforcement officer or jailer or any other person; or

    (2) Using any other means which creates a substantial risk of causing physical injury to the law enforcement officer, jailer or any other person;

    is guilty of resisting arrest. Resisting arrest is a Class 1 misdemeanor.

ed an intention to inflict pain, injury or punishment on the officer. In that regard, we took particular note of the arresting officer's testimony that, despite the physical resistance of the woman, her actions were neither offensive nor defensive, but merely attempts to get away from him. Despite our conclusion in *Sullivan*, we cautioned that:

This is not to suggest that physical acts by an arrestee can never constitute a threat under SDCL 22–11–4(1). It is not difficult to envision situations where an arrestee raises his arms in a fighting stance, actually swings at the officer, or gives some other indication of resistance that also indicates a threat to use force or violence. In such situations, the arrestee's actions could be tantamount to a *threat* of force or violence.

*Sullivan*, 2003 SD 147 at ¶ 13, 673 N.W.2d at 291 (emphasis original).

[¶ 14.] This case presents the scenario foreseen in *Sullivan*. Both Willson's words and his physical acts indicated an intention to use force or violence on Officer Wickenheiser. Some of his physical acts actually translated into the infliction of injuries on the officer. This was sufficient to provide the causal connection necessary to support the restitution awarded for Officer Wickenheiser's damages.

[¶ 15.] A similar case was presented to the Washington Court of Appeals in *State v. C.G.*, 114 Wash.App. 101, 55 P.3d 1204 (2002). In *C.G.*, a high school student who was being arrested threatened the arresting officer several times before kicking and damaging his patrol car as he placed her in the vehicle for transportation to a detention facility. The student was later convicted of felony harassment for the threats she made to the police officer. As part of her sentence, the court ordered her to pay restitution to the police department for the damage to the patrol car. On appeal, the student challenged the restitution order arguing that the damage to the patrol car was not causally related to the harassment offense for which she was convicted. The Washington Court disagreed stating:

The trial court reasoned that restitution was appropriate because the kicking of the car was part of the same criminal episode as the verbal threats—together, they constituted words or conduct that placed Officer Glover in reasonable fear that the threat would be carried out. This was a tenable basis for concluding the damage to the patrol car was caused by the criminal acts of harassment for which C.G. was convicted.

*C.G.*, 55 P.3d at 1207.

[¶ 16.] Although *C.G.*, *supra* was reversed on other grounds by the Washington Supreme Court (*see State v. C.G.*, 150 Wash.2d 604, 80 P.3d 594 (2003)), we share its views on the restitution issue. Restitution here was appropriate because Willson's physical acts with regard to Officer Wickenheiser were part of the same criminal episode as his verbal threats—together they constituted threats of physical force or violence against the officer. This was a tenable basis for concluding that the damages sustained by Officer Wickenheiser were caused by the criminal act of resisting arrest for which Willson was convicted. Thus, we hold that the trial court did not err in ordering Willson to pay restitution for those damages.

## ISSUE TWO

[¶ 17.] **Did the trial court err in admitting expert testimony at the restitution hearing without a proper foundation?**

[¶ 18.] Willson argues that Officer Wickenheiser's testimony during the restitution hearing concerning her injuries, medical expenses and lost wages constitut-

ed expert medical testimony admitted without a proper foundation. Accordingly, Willson contends that the restitution award must be reversed.

[¶ 19.] Initially, we note that, "the rules of evidence and civil burden of proof do not apply" at a restitution hearing. *State v. Ruttman,* 1999 SD 112, ¶ 3, 598 N.W.2d 910, 911 (citing *State v. Tuttle,* 460 N.W.2d 157, 159 (S.D.1990)). Thus, the evidentiary rules on expert testimony relied upon by Willson are inapplicable to restitution hearings.

[¶ 20.] We also observe that Officer Wickenheiser did *not* testify as a medical expert at the restitution hearing, but as the victim of the crime with personal knowledge of its consequences including her injuries, her medical expenses and her lost wages. During trial, Officer Wickenheiser repeatedly testified as to how she incurred injuries to her wrist and ankle during her struggle with Willson. During the restitution hearing, she linked those injuries to the treatment she received including the casting of her wrist, ankle surgery and physical therapy. She further linked her treatment to her various medical bills submitted as evidence. Finally, Wickenheiser testified concerning the time she was required to miss work because of her injuries and to her resultant loss of wages. We find no error in the admission of this evidence. *See State v. Andrews,* 2001 SD 31, ¶ 17, 623 N.W.2d 78, 83 (lay witness may give an opinion if he has personal knowledge of the matter and non-expert testimony requires no foundation). We further hold that it was sufficient to support the restitution awarded. *See Harris v. State,* 542 So.2d 1312 (Ala.Crim.App.1989)(uncertified copies of medical bills and expenses properly admitted into evidence at restitution hearing and properly considered by sentencing judge); *State v. Wilson,* 185 Ariz. 254, 914 P.2d 1346 (Ct.App.1996)(restitution order supported where victim authenticated his medical bills and testified concerning his out-of-pocket losses resulting from the injuries defendant inflicted on him); *Sims v. State,* 637 So.2d 21 (Fla.Dist.Ct.App.1994)(restitution order supported where victim testified concerning injuries she sustained during the crime and concerning her future tangible medical expenses resulting from her injuries); *People v. Kim,* 91 N.Y.2d 407, 671 N.Y.S.2d 420, 694 N.E.2d 421 (1998)(presentence report's detailed itemization of documented medical costs incurred by victim together with defendant's express and implied concessions of the accuracy and authenticity of those figures afforded the court a sufficient evidentiary basis for restitution award); *People v. Periard,* 15 A.D.3d 693, 788 N.Y.S.2d 725 (2005)(victim's sworn testimony sufficient to establish losses she incurred including replacement of certain personal items, lost wages and medical expenses); *State v. Bunn,* 66 N.C.App. 187, 310 S.E.2d 792 (1984)(ample evidence supported court's restitution recommendation where the series of medical bills establishing the amount were present at court); *Maloy v. State,* 990 S.W.2d 442 (Tex.App.1999)(finding that victim's restitution expenses were "just" supported by victim's detailed testimony concerning specific medical expense amounts incurred as a result of defendant's crime/victim's testimony concerning medical expenses actually incurred and of which she had direct knowledge not hearsay).

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.